# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| STONECOAT OF TEXAS, LLC, STONECOAT GP, LLC, and STONECOAT LP | § § § § | |
| v. | § § | Civil Action No. 4:17-CV-00303 Judge Mazzant |
| PROCAL STONE DESIGN, LLC, JOHN D. PROFANCHIK, SR., individually, JUSTIN KINSER, individually, IRMA VILLARREAL, individually, ALFREDO GONZALES, individually, PHILIPPE MERGAUX, individually, and PIERRE-LAURENT CHEMIELEC, individually | § § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Motion to Dismiss or Stay Under Colorado River, or in the Alternative, Motion to Dismiss Under Rule 12(b)(6), or in the Alternative, Motion for More Definite Statement Under Rule 12(e) (Dkt. #19). The Court, having considered the relevant pleadings, finds that Defendants' motion should be denied.

## BACKGROUND

Stonecoat of Texas, LLC ("Stonecoat, LLC"), Stonecoat GP, LLC ("Stonecoat GP"), and Stonecoat LP ("Stonecoat LP") (collectively "the Stonecoat entities") are companies that are in the business of making and selling spray-on stone facing. Ken Morrison ("Morrison") was involved in the origination of the spray-on stone facing and the formation of the Stonecoat entities. Because of the specialized nature of the business, the Stonecoat entities required employees and business partners to sign certain agreements pertaining to permissible competition, confidentiality, and non-disclosure.

1

In the winter of 2011, an investor group, which included Michael C. Hopkins ("M. Hopkins"), approached Stonecoat GP to invest in the business. After M. Hopkins signed a confidentiality agreement, Morrison and M. Hopkins agreed that M. Hopkins would make a capital infusion into the business and in exchange would become the managing member of Stonecoat GP in name, while Morrison would continue to handle day-to-day operations. At the last minute, M. Hopkins requested to give his interest and role to his son, Frederick Hopkins ("F. Hopkins"). By Fall 2012, Morrison began to question F. Hopkins's and M. Hopkins's loyalty, care, and good faith business judgment and actions, and he began to investigate their practices. After an investigation, Morrison uncovered what he alleged to be a conspiracy between M. Hopkins, F. Hopkins, and several others, including two employees of the Stonecoat entities', Pierre-Laurent Chamielec ("Chamielec") and Philippe Mergaux ("Mergaux").

In October 2015, Stonecoat, Morrison, and the Morrison Family Trust ("the *Hopkins* Plaintiffs") brought suit in the 116th Judicial District Court of Dallas County against these alleged conspirators arguing that they conspired to: (1) usurp business opportunities from Stonecoat; (2) create a competing business; (3) misappropriate Stonecoat's business and its knowledge processes, sourcing, and information; (4) violate written agreements of non-competition and confidentiality signed by M. Hopkins, Chamielec, and Mergaux;[1] (5) interfere with vendor and supplier relationships; (6) interfere with dealer relationships; (7) and deceive and misrepresent material facts ("the *Hopkins* lawsuit" or "the *Hopkins* case" or "the *Hopkins* suit"). M. Hopkins and F. Hopkins settled their dispute with the *Hopkins* Plaintiffs, and only Stonecoat GP continued to trial against Mergaux.[2] The jury found that Mergaux violated the Products Rights, Formula Purchase,

---

[1] As employees, Mergaux and Chamielec signed a Confidentiality/Non-Disclosure Agreement. Mergaux and Chamielec also signed a Product Rights, Formula Purchase, and Royalty Agreement as they were involved in the creation of the spray-on stone facing.
[2] Chamielec was never served in the *Hopkins* case.

and Royalty Agreement he had signed dated December 21, 2011 and did not violate his Confidentiality/Non-Disclosure Agreement dated July 6, 2011. The district court entered a final judgment based on the jury verdict.

Separate from the Hopkins business deal, in January 2015, Justin Kinser ("Kinser") approached the Stonecoat entities concerning employment. Kinser signed a Non-Disclosure Agreement as part of his employment ("Kinser NDA"). Kinser introduced Morrison to John D. Profanchik ("Profanchik"), who expressed an interest in buying the Stonecoat entities. Profanchik also signed a Non-Disclosure Agreement ("Profanchik NDA"). Profanchik ended up creating and forming Procal Stone Design, LLC ("Procal"), which is involved in the same business as the Stonecoat entities. The business relationship between the Stonecoat entities and Profanchik deteriorated.

Based on this business relationship, Profanchik sued Morrison, Rick Adams, Stonecoat, LLC, and Sam Hance (collectively "*Profanchik* Defendants") in May 2015 alleging fraud among other causes of action in the 416th Judicial District Court of Collin County, Texas ("the *Profanchik* suit" or "the *Profanchik* case" or "the *Profanchik* lawsuit"). Stonecoat, LLC filed a counterclaim in this suit arguing that Profanchik conspired with Irma Villarreal ("Villarreal"), Alfredo Gonzales ("Gonzales"), Kinser, Mergaux, Chamielec to create Procal, which is alleged to directly compete with Stonecoat. In its counterclaim, Stonecoat, LLC alleged breach of the Profanchik NDA, breach of fiduciary duty by Profanchik, misappropriation of trade secrets by Profanchik according to Texas law, unlawful appropriation of Stonecoat's property, and tortious interference with the contracts between the Stonecoat entities and Villarreal, Gonzales, Kinser, Mergaux, Chamielec. The *Profanchik* lawsuit proceeded and the Collin County District Court granted Profanchik's partial summary judgment as to Stonecoat, LLC's counterclaims. The case then

proceeded to trial, and the Collin County District Court entered a final judgment, on October 16, 2017, incorporating the summary judgment ruling and the jury verdict rendering. The final judgment states:

> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgment is rendered in favor of [*Profanchik* Defendants] as to [Profanchik's] claims for fraud, fraud by nondisclosure, and negligent misrepresentation and that [Profanchik] takes nothing by way of those claims.
> IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that judgement [sic] is rendered in favor of [Profanchik] as to all of StonecCoat's counterclaims and that StoneCoat takes nothing by way of those claims.
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Profanchik's] declaratory judgment action is rendered in favor of [Profanchik] and that the Court finds that the Non-Disclosure/Non-Compete Agreement between [Profanchik] and Stonecoat is unenforceable as a matter of law.
> IT IS FURTHER ORDERED, ADJUDGED and DECREED that each party will bear his or its own costs of suit and attorneys' fees.
> This judgment finally disposes of all claims and all parties and is appealable.

(Dkt. #42, Exhibit 1 at p. 2).

On May 5, 2017, the Stonecoat entities filed suit in the Eastern District of Texas against Procal, Profanchik, Kinser, Villarreal, Gonzales, Mergaux, and Chamielec based on the same set of facts as alleged in Stonecoat, LLC's counterclaim in the *Profanchik* lawsuit: Profanchik conspired with Villarreal, Gonzales, Kinser, Mergaux, and Chamielec to create Procal. In Plaintiffs' First Amended Original Complaint, the Stonecoat entities allege: a violation of the Lanham Act for engaging in unfair competition and false advertising; misappropriation of trade secrets and confidential and proprietary information against all Defendants; misappropriation of trade secrets and confidential information in violation of the United States Defend Trade Secrets Act of 2016; conversion; a violation of the Texas Theft Liability Act against all Defendants; a breach of contract against all Defendants, a breach of fiduciary duty against the Individual Defendants; tortious interference with existing business relationships against Procal and

4

Profanchik as to Villarreal, Gonzales, Kinser, Mergaux, Chamielec; unfair competition against all Defendants; and various theories regarding the alleged scheme against all Defendants.

On July 12, 2017, Defendants filed the present motion (Dkt. #19). On August 10, 2017, Plaintiffs filed its response to the motion (Dkt. #25). Defendants filed their reply on August 17, 2017 (Dkt. #26) and Plaintiffs filed their sur-reply on August 23, 2017 (Dkt. #27). Further, Profanchik filed a Notice of Rulings on Partial Summary Judgment (Dkt. #35) on September 27, 2017, and a Notice of Final Judgment (Dkt. #42) on October 20, 2017.

**LEGAL STANDARD**

**1.** *Colorado River* **Abstention**

The *Colorado River* doctrine allows a court to abstain from exercising jurisdiction over federal claims under "exceptional circumstances." *Brown v. Pacific Life. Ins. Co.*, 462 F.3d 384, 394 (5th Cir. 2006). The existence of the following six (6) factors determine whether "exceptional circumstances" exist:

> (1) assumption by either state or federal court over a res; (2) relative inconvenience of the fora; (3) avoidance of piecemeal litigation; (4) order in which jurisdiction was obtained by the concurrent fora; (5) extent federal law provides the rules of decision on the merits; and (6) adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction

*Id*. at 395. The decision to abstain must be based on a careful balancing of important factors as they apply to a case, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id*. Additionally, the doctrine only applies when there are parallel proceedings pending in federal and state court. *Id*. at 395 n.7. Proceedings are considered parallel if they "involve the same parties and the same issues." *Id*. It is not necessary that there be "a mincing insistence on precise identity of parties and issues." *Id*. The *Colorado River* test "should be applied in a pragmatic,

flexible manner with a view to the realities of the case at hand." *Allen v. La. State Bd. of Dentistry*, 835 F.2d 100, 104 (5th Cir. 1988).

### 2. Motion to Dismiss Pursuant to 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### 3. Motion for More Definite Statement

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of the pleadings when the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement . . . before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Motions for a more definite statement are generally disfavored because "in view of the great liberality of Federal Rule of Civil Procedure 8 . . . it is clearly the policy of the Rules that Rule 12(e) should not be used to . . . require a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Source Data Acquisition, LP v. Talbot Grp., Inc.*, 4:07-cv-294, 2008 WL 678645, at *2 (E.D. Tex. Mar. 11, 2008) (citing *Mitchell v. E-Z Way*

7

*Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)). In addition, "when a defendant is complaining of matters that can be clarified and developed during discovery, not matters that impede his ability to form a responsive pleading, an order directing the plaintiff to provide a more definite statement is not warranted." *Hoffman v. Cemex, Inc.*, No. H-09-2144, 2009 WL 4825224, at *3 (S.D. Tex. Dec. 8, 2009) (citing *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006)). "Nevertheless, parties may rely on Rule 12(e) as a mechanism to enforce the minimum requirements of notice pleading." *Id.*

## ANALYSIS

Defendants move to (1) dismiss or stay the suit based on *Colorado River* abstention; (2) dismiss the case under Federal Rule of Civil Procedure 12(b)(6); and (3) get a more definite statement of Plaintiffs' claim under Federal Rule of Civil Procedure 12(e). The Court will address each motion in turn.

**1. Motion to Dismiss or Stay Based on Abstention**

Defendants ask the Court to either dismiss or stay the current proceeding because of the two state court proceedings arguing that the cases are parallel. Further, Defendants maintain that three of the *Colorado River* factors weigh in favor of abstention and the remainder are neutral. Thus, according to Defendants, the factors support a dismissal or stay.[3] Plaintiffs respond that the actions are not parallel because the state court proceedings involve different parties and a different set of operative facts. Additionally, Plaintiffs contend that, if the proceedings are parallel, the *Colorado River* factors do not support a dismissal or a stay in this case.

---

[3] At the time the motion was filed, the *Profanchik* lawsuit was still pending. Since then, the *Profanchik* suit has concluded and a stay would not serve any purpose. However, because the Court finds that it should not abstain from exercising jurisdiction under the *Colorado River* doctrine, it will not address this in detail.

### A. Parallel Proceedings

Defendants maintain that this case is parallel with the *Hopkins* and *Profanchik* lawsuits. Defendants argue that the Plaintiffs in this case, or those in privity, have previously asserted claims against Defendants in this case, or those in privity, in the two state court actions. Plaintiffs respond that the *Hopkins* litigation is based on an entirely different set of facts than the case at bar. Further, Plaintiffs assert that the parties in the *Hopkins* and *Profanchik* cases are not substantially the same as the parties in this action.

Federal district courts have a "'virtual unflagging obligation . . . to exercise the jurisdiction given to them.'" *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). As such, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* However, a federal court may abstain if a parallel proceeding presents "extraordinary and narrow" circumstances. *Id.* at 813. Proceedings are considered to be parallel if they "involv[e] the same parties and the same issues." *Brown*, 462 F.3d at 395 n.7 (quoting *RepublicBank Dall., Nat'l Ass'n v. McIntosh*, 828 F.3d 1120, 1121 (5th Cir. 1987)) (alteration in original). However, "'it may be that there need not be applied in every instance a mincing insistence on precise identity' of parties and issues." *Id.* (quoting *RepublicBank*, 828 F.3d at 1121). Some courts have held that cases are still parallel if they involve "'substantially the same parties' litigating 'substantially the same issues.'" *Alpert v. Riley*, 2011 WL 801978, at *12 (S.D. Tex. Dec. 10, 2011) (citing *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006); *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *Allen v. Bd. of Educ., United Sch. Dist. 436*, 68 F.3d 401, 402 (10th Cir. 1995)). As a guiding principle, certain courts ask "whether there is a substantial likelihood that the state litigation will dispose of all

claims presented in the federal case." *Id.* (citing *TruServ v. Flegles, Inc.*, 419 F.3d 584, 592 (7th Cir. 2005); *Rowley v. Wilson*, No. 05–30189, 2006 WL 2233221, at *1 (5th Cir. Aug. 4, 2006) (unpublished opinion) (holding that suits were not parallel for *Colorado River* abstention purposes because some defendants that were in the federal case were not present in the state suit, and the plaintiff asserted claims against those defendants in the federal suit, which were not asserted in the state suit)).

The Court finds that the current proceeding and the state court proceedings are not parallel, although they are similar. The Court will address each state court proceeding.

      **i.**    ***Hopkins* Suit**

Defendants argue that Plaintiffs' claims are parallel with the *Hopkins* lawsuit because Plaintiffs, and those in privity, specifically Morrison and the Morrison Family Trust, asserted claims in the *Hopkins* suit against Mergaux and Chamielec. Further, Defendants maintain that the claims in both suits are based on a violation of the 2011 Product Rights, Formula Purchase Agreement and Royalty Agreement and the Confidentiality and Non-Disclosure Agreements. Plaintiffs maintain that the parties are not identical in the two lawsuits and that the factual allegations are completely different. Therefore, Plaintiffs maintain that their claims are not parallel with those in the *Hopkins* suit.

First, the *Hopkins* suit does not involve identical parties. The plaintiffs in the *Hopkins* suit were the Morrison Family Trust, Morrison, and the Stonecoat entities; whereas Plaintiffs in this suit are just the Stonecoat entities. The defendants in the *Hopkins* action were F. Hopkins, M. Hopkins, Brazostone Product LLC, Sheryl Schadt, Mergaux, Chamielec, and Cameron Miller as opposed to Defendants in this suit, which are Procal, Profanchik, Kinser, Villarreal, Gonzales, Mergaux, and Chamielec. While there is some overlap between the parties, the parties are not

identical and the cases are not parallel. *See Brown*, 462 F.3d at 395 n.7 (quoting *RepublicBank*, 828 F.3d at 1121). There may be an argument made that the parties are substantially the same, but the Court need not address that argument because the Court finds the issues are not substantially the same.

The *Hopkins* suit arose out of an investment gone badly between M. Hopkins, F. Hopkins and the Stonecoat entities in 2011 and 2012. This led the *Hopkins* Plaintiffs to file suit alleging various causes of action including, but not limited to: (1) fraud and deceit; (2) breach of fiduciary duty; (3) breach of contract against F. Hopkins, Chamielec, and Mergaux; and (4) tortious interference with contract. Here, the Stonecoat entities sued Defendants based on the potential sale of the company to Profanchik and the alleged conspiracy that went along with that transaction. Plaintiffs alleged similar causes of action in this case, but they arise out of a different business transaction, involving mostly new people. The fact that there are two overlapping Defendants, Mergaux and Chamielec, does not convert the Profanchik business transaction that occurred in 2015 into the Hopkins business transaction that happened in 2011. Because the parties are not identical and the issues are not identical, the Court finds that the current suit is not parallel to the *Hopkins* case. *See Brown*, 462 F.3d at 395 n.7 (quoting *RepublicBank*, 828 F.3d at 1121).

### ii. *Profanchik* Suit

Defendants assert that the *Profanchik* case is parallel to the present action because the two suits are based on the same set of factual allegations. Indeed, Defendants point to Stonecoat, LLC's First Amended Counterclaim in the *Profanchik* lawsuit and Stonecoat's First Amended Original Complaint to demonstrate that the two suits are based on the same set of facts. Plaintiffs maintain that the parties and the issues are not identical in the two lawsuits.

While some of the parties are the same and some of the issue are the same, some are not. *See Rowley*, F. App'x at 275. The *Profanchik* suit only involves two similar parties: Profanchik and Stonecoat, LLC. There are several other defendants to the federal action—Procal, Kinser, Villarreal, Gonzales, Mergaux, and Chamielec. Further, even though the two lawsuits are based on the same basic factual allegations—the Profanchik business deal—the issues are not exactly the same. The Stonecoat entities assert new causes of action against all Defendants, including the Lanham Act and the violation of the United States Defendant Trade Secrets Act of 2016. Plaintiffs also assert new causes of action against the Defendants not present in the *Profanchik* lawsuit. As such, there is not a substantial likelihood that the state litigation would dispose of the claims presented in this case. *See Alpert*, 2011 WL 801978, at *12. Indeed, the *Profanchik* suit concluded and did not dispose of all the claims presented in this case, including: all of the claims against the remaining Defendants and the violation of the Lanham Act, the violation of the United States Defend Trade Secrets Act of 2016, conversion, unfair competition, conspiracy, assisting or encouraging, and concert of action against Profanchik. Accordingly, the Court finds that this case is not parallel to the *Profanchik* suit. *See id.*

### B. *Colorado River* Factors

Even if the Court found that this case was parallel to the two state court suits, the Court finds that the *Colorado River* factors weigh against abstention in this case. Defendants argue that the *Colorado River* factors support the notion that the Court should either dismiss or stay the case based on the state court proceedings. Plaintiffs respond that it is only in exceptional circumstances the Court should abstain from exercising jurisdiction, and this is not one of those cases after a balance of the factors. The Court will address each factor in turn.

### i. Assumption by Either Court of Jurisdiction Over a *Res*

The parties agree that this case does not involve any *res* or property for any court, state or federal, to take control over. Defendants argue that this means this factor is neutral. "The absence of this factor is not, however, a 'neutral item, of no weight in the scales.' Rather, the absence of this first factor weighs against abstention." *Murphy v. Uncle Ben's Inc.*, 168 F.3d 734, 738 (5th Cir. 1999) (quoting *Evanston Ins. Co. v. Jimco, Inc.*, 844 F.2d 1185, 1191 (5th Cir. 1988)).

### ii. Relative Inconvenience of the Fora

Again, the parties agree that this factor is inapplicable because the state court actions are in Dallas County and Collin County and the federal court action is in the Eastern District of Texas, Sherman Division. As such, Defendants aver that this factor is neutral. However, the inapplicability of this factor does not render it neutral. *Id.* (citing *Evanston*, 844 F.2d at 1191). Indeed, "its absence weighs against abstention." *Id.* (citing *Evanston*, 844 F.2d at 1191).

### iii. The Avoidance of Piecemeal Litigation

Defendants argue that "[g]iven the near identity of issues, parties, claims, and causes of action between the *Hopkins* Lawsuit, the *Profanchik* Lawsuit, and this matter, duplication of effort is a certainty and inconsistent results a possibility." (Dkt. #19 at p. 17) (emphasis added). However, duplicative litigation is not a factor to be considered under *Colorado River*. *See Colo. River*, 424 U.S. at 819. This third factor is concerned with potential "inconsistent dispositions of property" when multiple parties make claims in separate lawsuits to a single *res* or underlying property. *Id.* This case does not involve the disposition of property or any *res*, and as such, there is no danger under this factor. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 651 (5th Cir. 2006).

If this factor extends to inconsistent decisions regarding the same issues, this factor still does not present any meaningful danger. As already mentioned, the *Hopkins* lawsuit is based on an entirely different set of facts than this suit, and any issue that has previously been litigated in that suit, such as validity of Mergaux's Non-Disclosure Agreement, can be obviated through collateral estoppel. *See id.* As to the *Profanchik* case, the current action presents new causes of action against the new Defendants, and new causes of action against Profanchik. Any duplicative cause of action against Profanchik is not an issue under this factor, and any possible "inconsistent judgment can be obviated through a plea of *res judicata*." *Id.* (emphasis in original); *Colo. River*, 424 U.S. at 819. Therefore, this factor weighs against abstention.

### iv. The Order in Which Jurisdiction Was Obtained by the Concurrent Fora

Defendants argue that this factor weighs in favor of abstention because the two state court actions are much further along than the current case. Defendants assert that this matter is in its beginning stages and the two state court actions are in their final stages or are being appealed.

"The priority element of the *Colorado River/Moses H. Cone* balance 'should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.'" *Murphy*, 168 F.3d at 738 (quoting *Evanston*, 844 F.3d at 1190). Here, the *Hopkins* and *Profanchik* cases were filed first, have progressed much further the current action. The two state court cases have already concluded, and the district courts have entered final judgments. As such, the state court proceedings are further along and this factor weighs in favor of abstention. *See id.*

### v. Extent Federal Law Provides the Rules of Decision on the Merits

Two of the asserted claims in Plaintiffs' First Amended Original Complaint are based on federal law: a violation of the Lanham Act and misappropriation of trade secrets and confidential

14

and proprietary information under the United States Defend Trade Secrets Act of 2016; and the remaining asserted claims are based in state law (Dkt. #9 at pp. 44–64). Defendants maintain that because only two claims of the various claims are based in federal law, a majority of the causes of action are grounded in state law, and because the facts for misappropriation under the United States Defend Trade Secrets Act of 2016, one of the federal claims, are identical to common state law claims, that the factor is neutral.

"The presence of a federal law issue 'must always be a major consideration weighing against surrender [of jurisdiction],' but the presence of state law issues weighs in favor of surrender only in rare circumstances.'" *Murphy*, 168 F.3d at 738 (quoting *Evanston*, 844 F.2d at 1193). "Because [this case] involve[s] both federal and state rules of decision, this factor weighs against abstention." *Id.*

### vi. The Adequacy of the State Proceedings In Protecting the Rights of the Party Asserting Jurisdiction

Defendants argue that Texas state courts are adequate to resolve business disputes, especially when a majority of the asserted claims are based in state law. Defendants further maintain that there can be no argument that states courts are inadequate to resolve the present dispute.

However, adequacy of the state court proceedings does not depend on whether a state court has the ability to decide an issue. Rather, Supreme Court has held that:

> When a district court decides to dismiss or stay under *Colorado River*, it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all. Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses.

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983).

15

As such, the question is whether there would be anything left for the Court to do substantively after the resolution of the two state court suits. *See id.* The Court already discussed a similar question when determining whether the state court actions were parallel with the federal court action. As to the *Hopkins* suit, the final judgment did not dispose of any of the claims presently before the Court, as the issues submitted to the jury were based on a different set of facts. As to the *Profanchik* case, some issues in this case were decided by the final judgment: Profanchik did not breach his NDA, he did not breach his fiduciary duty, he did not misappropriate trade secrets under Texas law, he did not engage in theft of property, and he did not tortuously interfere with the contracts of Villarreal, Gonzales, Kinser, Mergaux, and Chamielec, and the Profanchik NDA is unenforceable. However, there are still several remaining issues for the Court to decide: all of the claims against the remaining Defendants and the violation of the Lanham Act, the violation of the United States Defend Trade Secrets Act of 2016, conversion, unfair competition, conspiracy, assisting or encouraging, and concert of action against Profanchik. Therefore, there is more for the Court to do to resolve a substantive part of the case, and this factor weighs against abstention. *See id.*

### vii. Balance of the Factors

It is appropriate for a federal court to abstain from exercising its jurisdiction only in "extraordinary and narrow" circumstances. *Colo. River*, 424 U.S. at 813. The Court uses the *Colorado River* factors not as a "'mechanical checklist'" but carefully balancing them "'as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Murphy*, 168 F.3d at 738 (quoting *Moses H. Cone*, 460 U.S. at 16). While the Court acknowledges that one factor weighs in favor of abstention, five out of the six weigh against abstention. This case does not present the "extraordinary and narrow" circumstances, which warrant an abstention

from jurisdiction. *See Engenium Sols., Inc. v. Carr*, 2012 WL 8432678, at *10 (S.D. Tex. Sept. 28, 2012).

   2. **Motion to Dismiss**

Because the Court is exercising its jurisdiction over the case, it is proper to address Defendants' motion to dismiss. Defendants move to dismiss Plaintiffs claims because (A) res judicata bars Plaintiffs' claims and Plaintiffs engaged in improper claim splitting; and (B) Plaintiffs' First Amended Original Complaint does not meet federal pleading standards.

   A. **Res Judicata and Claim Splitting**

Defendants assert that the *Hopkins* suit bars Plaintiffs' claims against Mergaux and Chamielec because all Plaintiffs' claims alleged in this suit were raised or could have been raised in the *Hopkins* suit. Defendants additionally argue that Plaintiffs' claims against all Defendants should be dismissed because Plaintiffs engaged in improper claim splitting referring to both the *Hopkins* suit and the *Profanchik* suit. Plaintiffs respond that claim splitting is just another way of describing res judicata.[4] Plaintiffs continue that the *Hopkins* suit does not present any res judicata issues because the two actions arise out of a completely different operative set of facts. Plaintiffs further maintain that there is no res judicata effect from the *Profanchik* suit because there is a lack of identical parties, claims, transactions, and operative facts.

Res judicata "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Petro–Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). A party is precluded from relitigating claims when the following four elements are satisfied: "(1) the parties are identical or in privity; (2) the judgment in the prior action was

---

[4] Defendants' argument regarding impressible claim splitting falls under the doctrine of res judicata as claims that could or should have been brought with the previous action. *See Super Van Inc. v. City of San Antonio*, 92 F.3d 366, 371 (5th Cir. 1996). Therefore, the Court will address Defendants' argument under the umbrella of res judicata.

rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). To determine whether the two suits are based on the same claim or cause of action, the Fifth Circuit uses the transactional test. *Id.* Under this test, the "critical issue is whether the two actions are based on the 'same nucleus of operative facts.'" *Id.* (quoting *N.Y. Life Ins. v. Gillispie*, 203 F.3d 384, 387 (5th Cir. 2000.

"[G]enerally a res judicata contention cannot be brought in a motion to dismiss; it must be pleaded as an affirmative defense." *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. Dec. 23, 2008) (quoting *Test Masters*, 428 F.3d at 570). "[A]n affirmative defense may serve as the proper basis for a motion to dismiss for failure to state a claim so long as the district court considers only those pleaded and judicially noticed facts that are not 'outside the pleadings'' according to Rule 12(d)." *Id.* at 228 n.1 (citing FED. R. CIV. P. 12(d); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). Defendants have raised legitimate concerns regarding the effect of res judicata from the *Profanchik* suit on the present case; however, looking only to the pleadings and looking in the light most favorably to Plaintiffs, the Court finds that Plaintiffs have a plausible claim and res judicata would be better addressed at a later stage in the proceeding.[5]

### B. Pleading Standards

Defendants argue that Plaintiffs' First Amended Original Complaint is fatally flawed because it does not contain sufficient factual allegations and should be dismissed. Plaintiffs

---

[5]Addressing res judicata at a later stage gives Plaintiffs an opportunity to respond to the new order and judgment entered in the *Profanchik* suit.

respond that their First Amended Original Complaint contains enough factual allegations to meet the federal pleading standards.

After reviewing Plaintiffs' First Amended Original Complaint, the Court finds that Plaintiffs' pleaded a plausible complaint that gives a short and plain statement of the claims presented for relief in accordance with the Federal Rule of Civil Procedure 8(a). Therefore, the motion to dismiss should be denied.

### 3. Motion for More Definite Statement

Defendants claim that "Plaintiffs' claims are so vague and ambiguous that Defendants cannot respond to claims without Plaintiffs amending their Complaint to provide more specificity regarding their allegation and claims." (Dkt. #19 at p. 23). As the Court found that the First Amended Original Complaint is sufficient to meet the federal pleading requirements, the Court finds that the compliant is not so vague and ambiguous that Defendant cannot respond. Accordingly, the Court finds that the motion for more definite statement should be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Motion to Dismiss or Stay Under Colorado River, or in the Alternative, Motion to Dismiss Under Rule 12(b)(6), or in the Alternative, Motion for More Definite Statement Under Rule 12(e) (Dkt. #19) is hereby **DENIED**.

**SIGNED this 8th day of January, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE