# Exhibit 2

Justin Kinser Non-Disclosure/Non-Compete Agreement

June 9, 2014          Justin Kinser

# NON-DISCLOSURE / NON-COMPETE / NON-CIRCUMVENT CONFIDENTIALITY AGREEMENT



# COAT
## HYDRAULICALLY APPLIED LIMESTONE

Profanchik v. Stonecoat 416-02057-2015 SC 10/02/15 000015

TRIAL EXHIBIT
PX025

NON-DISCLOSURE / NON-COMPETE / NON-CIRCUMVENT CONFIDENTIALITY AGREEMENT

# CONFIDENTIALITY / NON-DISCLOSURE
# NON-COMPETE / NON-CIRCUMVENT
# AGREEMENT

WITNESSETH:

This Confidentiality Agreement ("Agreement") is made and entered into effective this _27_ day of _Jan_, 2015, by and between STONECOAT of Texas LLC, a Texas corporation(s) with its principal place of business at 4401 Westgrove Drive Addison TX., 75001 ((collectively referred to hereinafter as "STONECOAT") and between _Justin Randell Kiner_ an individual having his/her primary address at _3392 Swenson Dr. Plano, TX 75025_ (Referred to hereinafter as ("Receiving party")

WHEREAS, STONECOAT possesses certain confidential commercial information regarding its business model, strategies, relationships, including investor, distributorship and manufacturing sources for the distribution, sales and production of ready mixed product/material, and that can projected or otherwise applied and used as a stone or stucco veneer for surfacing within the building industry. STONECOAT of Texas, LLC, also possesses confidential information on other related building products and opportunities within the building industry. (hereinafter "STONECOAT" Information");

WHEREAS, RECEIVING PARTY has and will receive certain confidential commercial information regarding STONECOAT and its business information ("Receiving party Information");

WHEREAS, STONECOAT and Receiving party desires to enter into a working business relationship that will cause the exchange of confidential commercial information through the course of everyday business via consulting, employment, or any other type of paid business engagement of the Receiving party with StoneCoat. ("Business Engagements"); and

WHEREAS, the parties desire to discuss freely as much of the STONECOAT Information and Receiving party Information as may be necessary for any such Business Engagement and certain proprietary and confidential information in order to engage in potential business / commercial opportunities and transactions related to STONECOAT., its products, sales, distribution, distributor/dealer/investor relations and manufacturing relationships and opportunities.

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein and other good and valuable consideration, adequacy and sufficiency of which are hereby acknowledged, the parties hereto do hereby covenant and agree as follows:

1. **Confidential Information:** For purposes of this Agreement, "Confidential Information" shall mean the following:

    (a) All strategic, technical, financial, business, sources and other information relating to STONECOAT, and specifically including the identity of products, persons or entities relating thereto;

(b) Other valuable information of the parties designated as confidential expressly or by the circumstances in which it is provided.

2. OBLIGATIONS OF CONFIDENTIALITY / NON-DISCLOSURE / NON-COMPETE

2.1 (a) Receiving party agrees to keep in confidence and will not use and will prevent disclosure to others (including to parents, subsidiaries, affiliates and agents of Receiving party of any and all STONECOAT Information which has been received from STONECOAT, and to utilize said STONECOAT Information only for purposes of engaging and implementing Business with STONECOAT; provided, however, that the foregoing shall not apply to information that: STONECOAT shall at the time of disclosure specifically identify any information that STONECOAT asserts is proprietary or confidential to STONECOAT such as but not limited to procedures, documents and processes, sources and relationships, that are proprietary and confidential to STONECOAT and relating to the potential Business of STONECOAT and any potential Transaction.

(b) Was part of the public domain at the time of disclosure by STONECOAT, or thereafter became part of the public domain as by publication of an article, patented document or the like, through no fault directly or indirectly of STONECOAT or any of its employees or agents;

(c) Was disclosed to Receiving party or its affiliates on a non-confidential basis by a third party who did not obtain said STONECOAT Information directly or indirectly from STONECOAT or those who were under a confidentiality or non-disclosure obligation with respect thereto; or

2.2 (a) Receiving party agrees to prevent the unauthorized disclosure or release of said STONECOAT Information to any employee, associate, agent or affiliate. In furtherance of this Agreement, Receiving party shall obtain permission in writing from STONECOAT before advising any persons whom receiving party desires or feel necessary to share disclosed information, and thereafter having all persons who would have access thereto, of the confidential nature of the Receiving party Information and the same terms of this Agreement via an additional Non-Disclosure/Confidentiality agreement signed with STONECOAT.

2.3 (a) Without the prior written consent of STONECOAT, including same terms of this Agreement via an additional Non-Disclosure/Confidentiality agreement signed with STONECOAT, Receiving party will not, and will direct its employees, affiliates and agents not to, disclose to any third party the STONECOAT Information and either the fact that any discussions or negotiations are taking place concerning any possible business transactions, or that Receiving party has received any STONECOAT Information from STONECOAT, or any of the terms, conditions or other facts with or without respect to the Business Engagement, including the status thereof.

(b) The term "third party" as used in this Paragraph 3 will be interpreted broadly to include, without limitation, any corporation, partnership, business entity or individual.

2.4 Competition- Recipient agrees and will not, either directly or indirectly engage in any activities so similar in nature or purpose to those of STONECOAT outside of STONECOAT and the business engagement that they would displace business opportunities, customers or

NON-DISCLOSURE / NON-COMPETE / NON-CIRCUMVENT CONFIDENTIALITY AGREEMENT

potential customers of STONECOAT. Recipient agrees that they have entered into an agreement to work in a highly competitive niche market that requires absolute confidentiality and information and opportunities are created by working within STONECOAT, and agrees not to work in this market or any activities similar in nature or purpose, products and services offered by STONECOAT for a time of five years from the date signed.

2.5   Remedies- In the event of breach of this contract by Recipient, STONECOAT shall be able to seek injunctive relief and recovery of all attorney fees and entitled to a liability of 250,000.00 dollars for breach and violation of this agreement for disclosure of information or action to cause harm to the company including but not limited to any displacement of business, potential business opportunity, jobs and sales opportunities, business agreements or opportunity. This includes tortuous interference or harm between STONECOAT and business relationships with potential product manufacturers, suppliers, competitors and/or any other opposing forces that might want to use disclosed information for lawsuit or legal or monetary gain.

2.6   Neither the execution of this Agreement nor the disclosure of any information between the Parties shall be construed as granting a license under, or any right of ownership in, the intellectual property of the other party.

2.7   Return of Material. If the Transaction between the parties is not consummated upon expiration of the term of this Agreement or if a Disclosing Party so requests, the Recipient will return promptly to the Disclosing Party or destroy, all copies of any Confidential Information in the possession or control of Recipient or its representatives, and Recipient will destroy and cause its representatives to destroy, all copies of any analyses, compilations, studies or other documents prepared by the Recipient or its representatives for Recipient's use containing or reflecting any Confidential Information.

2.8   Confidentiality of Discussions. Except to the extent provided for herein, without the prior written consent of the other party, neither party shall disclose to any individual, governmental body, partnership, corporation or other entity the fact that discussions or negotiations are taking place concerning a possible business relationship between the parties or that either party has requested or received Confidential Information from the other, or any of the terms, conditions or other facts with respect to any such possible transaction, including the status thereof.

2.9   Ownership Rights.   All Confidential Information disclosed according to this Agreement shall remain the property of the STONECOAT and may not be reproduced by Recipient without prior written consent of the STONECOAT.

Rev. 06.09.2014          Non-Disclosure Confidentiality Agreement.          Page 4 of 6

Profanchik v. Stonecoat 416-02057-2015 SC 10/02/15 000018

NON-DISCLOSURE / NON-COMPETE / NON-CIRCUMVENT CONFIDENTIALITY AGREEMENT

2.10    Forced Disclosure. In the event that the Recipient becomes legally compelled (by statute, rule or regulation of executive or administrative authorities, deposition, interrogatory, request for documents, subpoena, civil investigative demand or similar process) to disclose any of the Confidential Information, Recipient shall provide the Disclosing Party with prompt prior written notice of such requirement so that the Disclosing Party may seek a protective order or other appropriate remedy and/or waive compliance with the terms of this Agreement. In the event that such protective order or other remedy is not obtained, or that the Disclosing Party waives compliance with the provisions hereof, Recipient agrees to furnish only that portion of the Confidential Information which Recipient is advised by written opinion of its legal counsel is legally required, and to exercise reasonable efforts to obtain assurance that confidential treatment will be accorded such Confidential Information.

2.11 Equitable Relief. Each party acknowledges and agrees that loss and injury would result to a Disclosing Party upon any breach of any of the covenants contained in this Agreement and that damages arising out of such breach may be difficult to ascertain. Therefore, each party agrees that, in addition to all other remedies provided at law or in equity, STONECOAT may petition and obtain, without bond, from a court of law or equity both temporary and permanent injunctive relief to prevent a breach by a Recipient of any of such covenants. Each party acknowledges that any breach of this Agreement will result in immediate, irreparable harm to STONECOAT.

2.12    Waivers and Consents. All waivers and consents given hereunder shall be in writing. No waiver by any party hereto of any breach or anticipated breach of any provision hereof by any other party shall be deemed a waiver of any other contemporaneous, preceding or succeeding breach or anticipated breach, whether or not similar, on the part of the same or any other party.

2.13    Notices. All notices and other communications hereunder shall be in writing and shall be deemed to have been given only if and when (i) personally delivered, or (ii) three (3) business days after mailing, postage prepaid, by certified mail, or (iii) when delivered (and receipted for) by an overnight delivery service, or (iv) when first sent by telex, telecopy or other means of instantaneous communication provided such communication is promptly confirmed by personal delivery, mail or an overnight delivery service as provided above, addressed to the appropriate party at the address set forth below its signature to this Agreement. Either party may change the address for the giving of notices and communications to it by written notice to the other party in conformity with the foregoing.

2.14    Headings. The Article and Section headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

2.15    Governing Law. And all matters relating hereto, and the interpretation and construction of this Agreement, shall be governed by and construed in accordance with the laws of the State of Texas. Any claim or cause of action arising from or related to this Agreement shall be brought exclusively in the court of appropriate jurisdiction in Dallas County, Texas.

Rev. 06.09.2014        Non-Disclosure Confidentiality Agreement.        Page 5 of 6

Profanchik v. Stonecoat 416-02057-2015 SC 10/02/15 000019

NON-DISCLOSURE / NON-COMPETE / NON-CIRCUMVENT CONFIDENTIALITY AGREEMENT

2.16   Parties in Interest. This Agreement shall inure to the benefit of, and be binding upon, the successors and assigns of the parties hereto.

2.17   Counterparts. This Agreement may be executed in two or more counterparts, all of which taken together shall constitute one and the same instrument.

2.18   Entire Agreement. This Agreement constitutes the entire understanding and agreement between the parties relating to the subject matter hereof and supersedes and cancels any and all previous or collateral agreements, negotiations, commitments, representations or understandings between the parties with respect to this Agreement and the subject matter hereof. This Agreement may not be changed, modified, or assigned (in whole or in part) except by an instrument in writing signed by an authorized representative of each party hereto.

2.19   Amendments. This Agreement may not be changed orally, but only by an agreement in writing signed by either party.

2.20   Severability. In case any provision in this Agreement shall be held invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions hereof will not in any way be affected or impaired thereby.

2.21   Term. This Agreement shall expire five (5) years from the date hereof.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the day and year first above written.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date set forth above.

STONECOAT OF TEXAS LLC                                  (Receiving party)

By: _____[signature]_____                               By: _____
Name: __Kem Morrison__                                  Name: _____
Title: __President__                                    Title: _____
Date: __Jan 22, 2015__                                  By: _____
                                                        Individual
                                                        Name: __Justin R Kasinof__
                                                        Date: __January 22, 2015__

Profanchik v. Stonecoat 416-02057-2015 SC 10/02/15 000020