# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **STONECOAT OF TEXAS. LLC** | § | |
| **STONECOAT GP, LLC** | § | |
| **STONECOAT LP** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | CIVIL ACTION NO. |
| **v.** | § | |
| | § | **4:17-cv-00303-ALM** |
| **PROCAL STONE DESIGN, LLC, JOHN D. PROFANCHIK, SR.** individually, **JUSTIN KINSER,** individually, **IRMAVILLARREAL,** individually, **ALFREDO GONZALES,** individually, **PHILIPPE MERGAUX,** individually, and **PIERRE-LAURENT CHAMIELEC,** individually, | § § § § § § § § § § § § § | |
| | | |
| **Defendants.** | | |

---

### PLAINTIFFS' RESPONSE TO IRMA VILLAREAL
### AND ALFREDO GONZALEZ'S
### MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE COURT:

STONECOAT OF TEXAS, LLC (hereinafter referred to as "SCOT" when distinction is necessary), STONECOAT GP, LLC (hereinafter referred to as "Stonecoat GP" when distinction is necessary), and STONECOAT LP (hereinafter referred to as "Stonecoat LP" when distinction is necessary), Plaintiffs herein (hereinafter collectively referred to as "Plaintiffs" when necessary) respond to the Motion for Summary judgment filed by Irma Villareal and Alfredo Gonzalez (hereinafter collectively referred to as "Defendants" and separately referred to as "Villareal" or "Gonzales") (Dkt. 127), and say:

## I.

## SUMMARY OF PLAINTIFFS' RESPONSE

Defendants previously worked for Plaintiffs under nondisclosure and noncompete contracts but were hired by John D. Profanchik, Sr. ("Profanchik") and Justin Kinser ("Kinser") to go to work for them in their new business competing with Plaintiffs -- Procal. Defendants, Profanchik and Kinser participated together and worked together in concert to compete against Plaintiffs despite contracts agreeing not to compete and not to disclose Plaintiffs' trade secrets. Kinser and Profanchik conducted a due diligence of SCOT in contemplation of purchasing SCOT and during the due diligence met Villareal and Gonzalez and solicited them to leave their employment with Plaintiffs and to work with Kinser and Profanchik in competition with Plaintiffs. During their work with Plaintiffs, Defendants received trade secrets and confidential information of Plaintiffs; but they promised in their contracts, that the trade secrets and confidential information would not be disclosed and that they would not compete against Plaintiffs. Ultimately, however, Kinser and Profanchik solicited Defendants to come to work for them in breach of Defendants contracts with

Plaintiffs. Kinser and Profanchik formed Procal to compete against Plaintiffs.

After leaving their employment with Plaintiffs, Defendants went to work for Plaintiffs' competitor, Procal, and signed a written contract with Procal to do precisely the same work that they previously were doing for Plaintiffs prior to the time they left Plaintiffs' employment. Armed with Plaintiffs' trade secrets and confidential information, Defendants in concert with Kinser and Profanchik, and in accordance with their new Procal contracts, used the confidential information and trade secrets of Plaintiffs and began to compete against Plaintiffs in violation of their contracts with Plaintiffs.

Defendants' Motion fails to provide summary judgment evidence, argument or legal authorities for why Defendants should not be held accountable for their breach of their contracts with Plaintiffs and for their misappropriation of Plaintiffs' trade secrets and confidential information. Defendants have acted in concert with Kinser and Profanchik in misappropriating trade secrets and breaching their contracts with Plaintiffs.

Defendants were and are willing participants in the infringement of Plaintiffs' trademarks and unlawful disclosure of Plaintiffs' trade secrets and confidential information. Defendants are co-conspirators with Kinser and Profanchik in misappropriating Plaintiffs' trade secrets and confidential information and an infringing Plaintiffs' "Stonecoat" trademark by publishing Procal advertisements on YouTube infringing Plaintiffs' trademark. Plaintiffs have been clearly damaged by the actions of Defendants and their co-conspirators, Kinser and Profanchik, and for these reasons, Defendants' Motion for Summary Judgment should be denied.

## II.

## RESPONSE TO DEFENDANTS' STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT

In accordance with United States District Court for the Eastern District of Texas Local Rule CV-56 (b), Plaintiffs respond to Defendants' statement of the issues to be decided, and say:

*Lanham Act*:   Defendants mischaracterize Plaintiffs' trademark infringement claim by focusing only on the "Blown Stone" mark and not addressing and completely sidesteping the "Stonecoat" mark. There is evidence that Defendants, in conspiracy and participation with Kinser, Profanchik, Phillippe Mergaux ("Mergaux") and Pierre Chamielec ("Chamielec"), infringed the Stonecoat GP and Stonecoat LP "Stonecoat" mark in commercial advertising promoting Procal published by Procal on YouTube.

*Misappropriation of trade secrets*: There is no dispute that Stonecoat GP and Stonecoat LP own trade secrets and other confidential information which was purchased from Mergaux and Chamielec in the Product Rights Agreement. Defendants do not have standing to question the product purchased by Stonecoat GP and Stonecoat LP in the Product Rights Agreement because they were not parties to that agreement. They are strangers. Thus, there is an issue to be decided by the Court, as a matter of law, of whether or not Defendants have legal standing to question the validity and enforceability of the Product Rights Agreement and its terms and the product(s) purchased in the Product Rights Agreement. There is evidence that Defendants, in participation with Kinser and Profanchik, and Procal and are using Stonecoat GP and Stonecoat LP's trade secrets purchased from Mergaux and Chamielec.

*Defendants' NDA and noncompete contracts*. There is evidence that Defendants received consideration for their execution of their NDA and noncompete contract with Plaintiffs and, additionally, consideration is established as a matter of law on the face of the contracts. Thus, Defendants' motion claiming that there is no consideration to support their contracts with Plaintiffs has no merit.

*Defendants' noncompete contracts are enforceable.* Defendants noncompete contracts are enforceable because they are limited to only the necessary time, scope of activity and geographical area and, in this case, Defendants' breach of their contracts is as a result of their employment with Plaintiffs direct competitor, Procal in North Texas, including Dallas and Collin County. The restrictions in Defendants' noncompete contracts are enforceable and the evidence is clear that Defendants breached their noncompete contracts by going to work for Procal in Addison, Texas -- just a few blocks from the offices of Plaintiffs -- almost immediately after leaving their employment with Plaintiffs. There is no evidence to support Defendants' contention that their NDA noncompete contracts are unenforceable as a matter of law.

*Defendants are fiduciaries.* Defendants were employees of Plaintiffs and as a matter of law owed Plaintiffs a fiduciary duty. Defendants placed themselves in a position of trust and Plaintiffs trusted Defendants with Plaintiffs' confidential information and trade secrets and Defendants cannot deny that they were placed in a position of trust and received confidential information from Plaintiffs.

*Unfair competition.* The evidence establishes that Defendants engaged in unfair competition and conspiracy with Kinser, Profanchik, Procal, Mergaux and Chamielec to engage in unfair competition against Plaintiffs. They obtained trade secrets and confidential information from Plaintiffs and then used the trade secrets and confidential information to directly compete against Plaintiffs despite their promises that they would not do so. The unfair competition claims derived from Defendants' intentional conduct.

*Declaratory and injunctive relief.* Declaratory and Injunctive relief is available in federal court as a matter of law. Defendants' breach of their noncompete contracts irreparably harms Plaintiffs and Plaintiffs are not required, at this stage of these proceedings, to prove their success.

Plaintiffs are likely to succeed and are entitled to a permanent injunction to prohibit Defendants from using Plaintiffs' trade secrets and competing against Plaintiffs in violation of their promise not to do so.

*Plaintiffs have been damaged*. Plaintiffs can establish damages as a result of the actions of Defendants and the question of the proximate cause of those damages is a question to be determined by the jury and not a proper matter for a summary judgment proceeding. For instance, the evidence conclusively establishes that $500,000 was the commercial fair market purchase price for the trade secrets in the Product Rights Agreement and that the negotiation of that purchase price was between independent parties at fair market value in an arm's-length transaction. There is more than sufficient evidence to support the licensing and franchise fee damages sought by Plaintiffs. Plaintiffs' damages calculations are based on lost profits, disgorgement, unjust enrichment, value of the trade secrets, and royalties owed for use of the trade secrets. The liquidated damages provision in Defendants' contracts is not a penalty and is enforceable.

## III.

## RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

In accordance with United States District Court for the Eastern District of Texas Local Rule CV-56 (b), Plaintiffs believe the following are undisputed material facts:

### A. Undisputed Material Facts and Admissions by Kinser, Profanchik and Defendants.

1.      The execution, language, terms, enforceability and validity of the Profanchik NDA Contract, *see* Ex. A, Kenneth Morrison Affidavit (hereinafter "Morrison Aff. at ___") at Ex. 1, attached; *see also* Dkt. #67-5), the Kinser NDA Contract (*See* Ex. A, Morrison Aff. at Ex. 2, attached; Dkt. #67-4), the Villareal NDA Contract (*See* Ex. A, Morrison Aff. at Ex. 3; and, Dkt. #67-23), the Gonzales NDA Contract (*See* Ex. A, Morrison Aff. at Ex. 4; and, Dkt.

#67-24), and the Mergaux NDA Contract (*See* Ex. A, Morrison Aff. at Ex. 5; and, Dkt. #67-16) are not disputed and these contracts are valid, enforceable and have not terminated.

2.      The execution, language, terms, enforceability and validity of the PRODUCT RIGHTS, FORMULA PURCHASE AND ROYALTY AGREEMENT (The "Product Rights Agreement") dated December 21, 2011 between Stonecoat GP, LLC ("Purchaser") and Philippe Mergaux ("Seller") (*See* Ex. A, Morrison Aff. at Ex. 6; Ex. B. Bundren Aff. at Ex. 15; and, Dkt. #67-19) are not disputed. This contract is valid, enforceable, and has not terminated. (*See* Ex. B. Bundren Aff. at Ex. 5 at 131, L 23- 132, L12; 148-150, L3; 151-152).

3.      The Product Rights Agreement has not terminated and is enforceable as referenced by the Final Judgment and Jury Verdict from the "Hopkins Litigation" in the state court lawsuit in Dallas County, Texas between Stonecoat GP, Stonecoat LP, SCOT and Ken Morrison v.  Mergaux *et. al.*  (*See* Ex. B. Bundren Affidavit at Exs. 1 & 2; Dkt. ##67-17 and 67-18). The Product Rights Agreement was enforced by State District Court Judge Tonya Parker in the 116th Judicial District Court of Dallas County, Texas in July 2016 and that decision has not been reversed. *Id.*

4.      Profanchik is the owner, majority member, manager and controls and directs the operations of Procal Stone Design, LLC, Procal Stone Design USA, LLC, and Procal Enterprises, LLC ("Procal").[1]

5.      Stonecoat GP is the owner of the "Stonecoat" mark issued by the United States patent and trademark office, Reg. No. 4,299,469 registered on March 5, 2013. (*See*, Exhibit 9 to Ex. A, Ken Morrison Affidavit at ℙ66).

---

[1]      *See* Ex. A, Morrison Aff. at ℙ 10; *see also,* Dkt. # 67-2 at ℙℙ 29-33, 35-36; and, *see* Plaintiffs' Exhibits 3-12; Ex. B. Bundren Aff. at Ex. 15, attached at ℙ 2 at 378).

6.      Profanchik, Procal, Kinser, Villareal, Gonzales, Mergaux and Chamielec compete with Stonecoat LP, Stonecoat GP and SCOT. [2]

7.      Kinser, Profanchik and Procal hired Kinser, Villarreal, Gonzales, Mergaux and Chamielec to compete against Plaintiffs and required them to enter into written contracts and nondisclosure agreements with Profanchik and Procal to not disclose confidential information and trade secrets.[3]

8.      Defendants, Kinser, Profanchik and Procal have interfered with, misappropriated and unlawfully used the trademark owned by Stonecoat GP. (*See* Ex. A. Morrison Aff. at ¶ ¶65-67).

9.      Kinser admits that Kinser and Profanchik participated and acted jointly and together in searching for and conducting due diligence of SCOT and eventually signing contracts with SCOT. (*See* Kinser's Motion for Summary Judgment, DKT. #128 (hereinafter referred to as "Kinser's Motion") at 6-7).

10.      Villareal admits that she signed a "Confidentiality/Non-disclosure Non-compete/Non-Circumvent Agreement" (hereinafter referred to as "Villareal's NDA") with Plaintiffs on April 19, 2013. (*See* Dkt. #127-2 at ¶13). She also admits to being the office manager for Plaintiffs and handling financial matters for Plaintiffs including banking, accounts receivable and accounts payable. *Id.* at ¶¶ 6 and 22.

---

[2]      *See* Ex. A, Morrison Aff. at ¶ 10 -13; *see also* Dkt. ##67-2 at ¶¶ 29-33, 35-36; Dkt. ##67—3 at ¶¶ 13, 17-20, 22, 24, and 37-43; Dkt.  ##67-9 at ¶¶ 21-24 and 27; Dkt. ##67-22 at ¶¶ 15, and 18-2; *see* Ex. B. Bundren Affidavit at Ex. 3 at ¶ 2-3 at 378-379; Ex. B. Bundren Affidavit at Ex. 4 at 210, 214, 215, 217-218; *see* Ex. B. Bundren Aff. at Ex. 4 at 216-218; Ex. B. Bundren Aff. at Ex. 5 at 163-168; Ex. B. Bundren Aff. at Ex. 6 at 292;).

[3]      *See* Ex. A, Morrison Aff. at ¶ 42-43, 54-60; *see also* Dkt. ##67-2 at ¶¶ 29-33, 35-36; Dkt. ##67—3 at ¶¶ 13, 17-20, 22, 24, and 37-43; Dkt.  ##67-9 at ¶¶ 21-24 and 27; Dkt. ##67-22 at ¶¶ 15, and 18-2; and, *see* Plaintiffs' Exhibits 3-12; Ex. B. Bundren Aff. at Exs. 9-14 -- Employment Agreements and Mutual Confidentiality and Non-disclosure Agreements between Kinser, Villareal and Gonzales, and Procal; Ex. B. Bundren Aff. at Ex. 4 at 208-210, 211- 215).

11.     Villareal admits leaving Plaintiffs' employment on April 17, 2015, and when she left, she admits removing from Plaintiffs offices the "NDA/Non-Competes" of Alfredo Gonzales, John Profanchik, Justin Kinser and Irma Villareal. *Id.* at ⁋ 15.

12.     Villareal admits going to work for Profanchik after she left the employment of Plaintiffs in April 2015, and in January 2016 she admits to becoming the "office manager" for Profanchik, Kinser and Procal. *Id.* at ⁋⁋ 18- 21.

13.     Gonzalez admits to managing crews and being a foreman on installation jobs for Plaintiffs (*See* Dkt. #127-3 at ⁋10), doing sales, interacting with customers, preparing bids for jobs and pricing jobs for Plaintiffs. *Id.* at ⁋ 13. He also admits to participating in and conducting Plaintiffs' specialized training classes. *Id.* at ⁋ 14.

14.     Gonzalez admits that he signed a "Confidentiality/Non-disclosure Non-compete/Non-Circumvent Agreement" (hereinafter referred to as "Gonzalez's NDA") with Plaintiffs on August 13, 2013. *Id.* at ⁋ 14.

15.     Gonzalez admits leaving the employment of Plaintiffs on April 20, 2015, *id.* at ⁋ 17, and going to work for Kinser and with Kinser, immediately, beginning to spray limestone and teach Kinser the installation process. *Id.* at ⁋ 21.

16.     Gonzalez admits going to work for Profanchik and Procal in January 11, 2016 as "manager of construction services" and that his duties and responsibilities at Procal included overseeing the "entire construction process and [supervising] the crews actually doing the work" and assisting "with initial meetings with prospective customers, bidding and making estimates and closing sales." *Id.* at ⁋ 23.

17.     Plaintiffs' principal place of business is at 4401 Westgrove Dr., Addison, TX 75001. (*See* Dkt. #127-4 at 2).

18.     Plaintiffs possesses certain confidential commercial information including Plaintiffs business model, strategies, relationships, investor, distributor and manufacturing sources for the distribution, sales and production information including Plaintiffs "strategic, tactical, financial, business, sources and other information related to" Plaintiffs. ("Plaintiffs' Confidential Information"). *Id.*

19.     Plaintiffs agreed to give Defendants Plaintiffs' Confidential Information in exchange for Defendants' promises to Plaintiffs in the Villareal and Gonzales NDAs. *Id.* and Dkt. # 127-5 at 2.

20.     Defendants agreed to "keep in confidence" and "not use" and to "prevent disclosure to others" Plaintiffs Confidential Information and to utilize Plaintiffs Confidential Information "only for purposes of engaging and implementing business with" Plaintiffs. *Id.* at 3, ¶ 2.1(a).

21.     Defendants also agreed "to prevent the unauthorized disclosure or release of" Plaintiffs' Confidential Information "to any employee, associate, agent or affiliate." *Id.* at 3, ¶ 2.3(a).

22.     Defendants agreed not to compete with Plaintiffs. Defendants agree that they would "not, either directly or indirectly engage in any activities so similar in nature or purpose to those of" Plaintiffs "outside of" Plaintiffs "and the business engagement that they would *displace business opportunities, customers or potential customers* of" Plaintiffs. *Id.* at 3, ¶ 2.4) (emphasis added).

23.     Defendants agreed that Plaintiffs' business was "in a highly competitive niche market that requires absolute confidentiality" and Defendants agreed not to work in the "niche market" "or any activity similar in nature or purpose, products and services offered by Plaintiffs "for a time of five years from the date" of their NDAs. *Id.* at 3, ¶ 2.4.

24. Defendants agreed to a liquidated damages provision of $250,000 for any breach by them of their NDAs. *Id.* at 3, ⁋ 2.5).

25. Plaintiffs provided training to Gonzalez that included extensive discussion of the "chemical formulas" used by Plaintiffs (*see* Ex. B. Bundren Aff. at Ex. 6 at 324-325) and this training would not have been provided to anyone unless they signed "an NDA" before being "allowed to go into" the training session. *Id.* at 325-326; Exhibit C, Adams Aff. at ⁋⁋ 6-17.

26. After April 2015, Kinser searched for and found and developed the competing showroom of Procal only a "few blocks" away from where Plaintiffs offices were located in Addison, Texas for the purposes of competing against Plaintiffs after Kinser and Profanchik decided not to purchase the assets of SCOT. Kinser with the assistance of Gonzalez blew stone and developed Procal's competing showroom competing against Plaintiffs. (s*ee* Ex. B. Bundren Aff. At Ex. 4 at 209-215.)

27. After signing their NDAs, Plaintiffs gave Kinser, Profanchik, Villareal and Gonzalez all of the information that Plaintiffs promised to give them in their written agreements including "strategic, technical, financial, business sources" and other information "related to Stonecoat products". (*See* Ex. B. Bundren Aff. at Ex. 7 at 87.); Exhibit C, Adams Aff. at ⁋⁋ 6-17.)

28. Kinser solicited Alfredo to leave his employment with Plaintiffs and to work with Kinser, Profanchik and Procal. (*See* Dkt. #128 at 11.).

29. Despite Gonzalez's recitation of his background in "construction," Gonzales has admitted that he had no prior experience in the sprayed vertical limestone business prior to receiving his training from Plaintiffs (s*ee* Ex. B. Bundren Aff. at Ex. 4 at 218-220), and he has admitted that Plaintiffs provided him with his training on how to blow limestone. (*See* Dkt. #127-3 at ⁋⁋ 14, 21-25.)

30. There is no dispute that Kinser "broke off his relationship with SCOT" on "April 20, 2015" and that on the same day Gonzalez "resigned" and that Gonzales started working with Kinser (*See* Dkt. # 128 at 10-11.).

31.   The January 29, 2019 the USPTO issued a Notice of Allowance of SCOT's patent. *(See* Ex. A. Morrison Aff. at ⁋73, Exhibit 11).

32. Villareal received consideration for her promises to Plaintiffs including receipt of and access to privileged, proprietary and confidential information of Plaintiffs including, but not limited to wages and salaries and commissions paid to Plaintiffs' employees. (*See* Ex. A, attached, Aff. of Morrison at ⁋26.).

33. Gonzalez received consideration for his promises to Plaintiffs including receipt of and access to privileged, proprietary and confidential information of Plaintiffs including, but not limited to wages and salaries and commissions paid to Plaintiffs' employees. *Id.* at ⁋29. Gonzalez was the field operations and sales manager for Plaintiffs and had access to financial records, customer accounts, customer pricing, and specialized training information. *Id.* at 30.

**B. Disputed immaterial facts.**

Plaintiffs believe that there is no dispute regarding damages that Plaintiffs have suffered; however, for purposes of this summary judgment proceeding, Defendants have disputed those damages which are as follows:

1.   Plaintiffs suffered $816,032 in lost profits through July 31, 2017. *(See* Ex. A. Morrison Aff. at ⁋72, C.).

2.   Plaintiffs suffered $816,032 in disgorgement damages through July 31, 2017. *(See* Ex. A. Morrison Aff. at ⁋72, D.).

3.      Plaintiffs suffered $500,000 in damages for the value of the misappropriated trade secrets through July 31, 2017. *(See* Ex. A. Morrison Aff. at ⁋72, E.).

4.      Plaintiffs are entitled to a royalty of $600,000 for the value of the misappropriated trade secrets through July 31, 2017. *(See* Ex. A. Morrison Aff. At ⁋72, F.).

5.      Defendants have been unjustly enriched in the amount of $1,745,631 through July 31, 2017. *(See* Ex. A., Morrison Aff. at ⁋72, G.).

Many of the statements made by Defendants in their "statement of undisputed material facts" are immaterial and irrelevant to their Motion.

6.      Defendants' statements of undisputed facts in their Motion, other than their admissions identified above, are irrelevant to the Motion and Plaintiffs' legal claims against Defendants.

7.      Defendants have not provided a clear statement of the necessary undisputed facts that would support their motion for Summary Judgment.

**IV.**

**OBJECTIONS TO SUMMARY JUDGMENT EVIDENCE OFFERED BY DEFENDANTS**

Plaintiffs object to the following summary judgment evidence offered by Defendants because it is hearsay:

1.      Dkt. ## 127-11,14 and 21. A proper foundation has not been laid and these exhibits and the information contained within them is hearsay and not admissible.

2.      Dkt. #127-2 at ⁋23 and Dkt. # 127-3 at ⁋⁋ 25, 26, 28, 29 and 30.

Plaintiffs object to the following summary judgment evidence offered by Defendants because it is either speculation or immaterial and irrelevant to the Motion:

---

1.      Dkt. # 127-2 at ⁋⁋ 15 (reasons for leaving employment of Plaintiffs), 17, 22, 23 and 24.

2.      Dkt. # 127-3 at ⁋⁋ 8, 16, 19, 20, 25, 27, 28, 29 and 30.

## V.

## ARGUMENT AND AUTHORITIES

### A.      *Summary Judgment Standard of Review.*

Summary judgment is only proper if the Defendants show shows that there are no genuine disputes of material fact and that Defendants are entitled to judgment as a matter of law. FRCP 56(a); *Tolan v. Cotton*, 572 U.S.650, 656-57 (2014). Summary judgment is not proper if the nonmovant (Plaintiffs) shows that there are genuine disputes of material fact and that the movant is not entitled to judgment as a matter of law. *Id*.; *Celotex Corp. v. Catrett,* 477 U.S.317, 322 (1986). In this case, Defendants' summary judgment proof does not establish the absence of a genuine dispute. There are clearly genuine disputes regarding the summary judgment facts which preclude granting Defendants a motion for summary judgment. *See* 2010 Notes to FRCP 56 at ⁋11, FRCP 56 (c)(1)(B).

A factual dispute is one that can be determined only by a trier of fact because it may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-49 (1986). A genuine dispute exists when a reasonable jury could resolve the disputed fact in favor of, or in the manner described by, the nonmovant. *Meadowbriar Home for Chuldren, Inc. v. Gunn,* 81 F.3d 521, 533 (5th Cir. 1996). A material fact is one that can affect the outcome of the suit under the governing substantive law. *Anderson,* 477 U.S. at 248. Defendants have simply not met their burden to prove that there is no genuine factual dispute. Defendants' Motion, on its face, establishes facts which rebut the bases for the Motion and, thus, the Motion should be denied.

**B. Plaintiffs' Lanham Act Claims are supported by the law and evidence and Defendants' Motion sidesteps Plaintiffs' claims.**

*False advertising:* Defendants have falsely stated in commercial advertising that Defendants "invented" sprayed limestone and have been in the sprayed vertical limestone business for "over 17 years." Defendants have made these false statements on their website, and in TV ads and print advertising distributed by the United States Postal Service in interstate commerce. Defendants have participated in these false statements and have allowed their images to be used in these false statements. The statements are literally false. In addition, the statements have a tendency to deceive a substantial segment of the consuming audience. Customers have been obviously deceived by Defendants' literally false statement regarding the length of time – "17 years" -- that Defendants have been involved in the sprayed vertical limestone business and consumers have been confused and deceived by Defendants' statement that they "invented" sprayed limestone, again, a literally false statement. (*See* Ex. A. Morrison Aff. at ℗74). These literal false statements are contradicted by the affidavit of Kinser attached to his Motion (Dkt. #128) which confirms that Kinser and Profanchik did not get started in the sprayed limestone business until the latter part of 2015 and then opened for business as "Procal" in January 2016. (*See* Dkt. # 128-2 at ℗℗ 36-42, and Dkt. # 127-2 ℗℗ 20-21 and Dkt. # 127-3 ℗℗ 22-24).

Kinser's affidavit also contradicts the statements made by Defendants in their commercial advertising regarding who "invented" sprayed limestone. Statements made on Procal's website, TV commercials, and print advertising are inconsistent with the affidavit of Kinser, Villareal and Gonzales. Defendants have engaged in the publication of literal false statements in commercial advertising that has deceived or has a tendency to deceive the consuming audience and Defendants have not established that Defendants' deception is not likely to influence the purchasing decision of the consuming public.

A violation of the Lanham Act occurs when either (1) a commercial advertisement is literally false *or* (2) that it is likely to mislead and confuse customers. *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996). If defendant's statement is literally false, it is unnecessary for the plaintiff to prove the deception and confusion of buyers or consumers of the product.[4] The statements made by Defendants are literally false and are literally contradicted by Kinser's, Villareal's and Gonzalez's affidavits. In addition, the literally false statements are clearly likely to deceive and confuse the consuming public (*see* Ex. A. Morrison Aff. at ¶74); but, because they are literally false, Plaintiffs are not required to show the deception or confusion of buyers or consumers of Defendants' product. Therefore, on this issue, the Motion should be denied.

*Trademark infringement:* Defendants sidestep Plaintiffs' trademark infringement claim by erroneously relying on the "blown Stone" trademark instead of the "Stonecoat" trademark. (*See* Defendants' Motion at 17-19). Defendants participated with Profanchik, Procal, and Kinser in publishing a YouTube advertisement under the trade name of "Procal" which included within the advertisement workers installing sprayed limestone and wearing T-shirts with Plaintiffs' trademark "Stonecoat".  (*See* Ex. A. Morrison Aff. at ¶¶66-67). Defendants' Motion does not address these obvious trademark infringement violations. The Motion argues and only addresses the trademark "blown Stone" which is not a basis of Plaintiffs' trademark violation contention. But, because Defendants did not address the "Stonecoat" trademark in their Motion, on this issue the Motion should be denied.

*Unfair competition*: Defendants' Motion does not address Plaintiffs' Lanham Act claim

---

[4]     *Avila v. Rubin*, 84 F.3d 222, 227 (7th Cir. 1996); *see also PPX Enterprises, Inc., v. Audiofidelity Enterprises, Inc.*, 818 F.2d 266, 272 (2d Cir. 1987).

for "unfair competition." (*See* Plaintiffs Second Amended Original Complaint, Dkt. #103 at ¶

142-143.). Therefore, it is unnecessary for Plaintiffs to respond to the unfair competition. claim

in their pleadings; however, a claim for unfair competition "is the umbrella for all statutory

and non-statutory causes of action arising out of business conduct which is contrary to honest

practice in industrial or commercial matters."[5] Unfair competition also occurs by

misappropriation of confidential information and trade secrets.[6] In general, the tort of unfair

competition only requires the plaintiff to show an illegal act by the Defendant which interfered

with the plaintiff's ability to conduct its business. *Taylor Pub. Co*., 216 F.3d at 486.

Defendants' Motion does not address unfair competition by misappropriation.

Defendants concert of action with Kinser, Profanchik and Procal in executing agreements to

not disclose Plaintiffs' confidential information and trade secrets and not to compete against

Plaintiffs and then breaching those agreements after Plaintiffs disclosed confidential

information and trade secrets to them is a civil illegal act and constitutes unfair competition.

### C. Stonecoat LP and Stonecoat GP's misappropriation of trade secrets and theft claims are valid and supportable by the record.

---

[5]    *Taylor Publishing Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (*quoting American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974); *accord United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc*., 865 S.W.2d 214, 217 (Tex. App.--Waco 1993, writ denied). "The tort [of unfair competition] requires that the plaintiff show an illegal act [but not necessarily criminal act] by the defendant which interfered with the plaintiff's ability to conduct its business." *Taylor Publishing*, 216 F.3d at 486 (*citing Schoellkopf v. Pledger*, 778 S.W.2d 897, 904-05 (Tex. App.--Dallas 1989, writ denied)).

[6]    *U.S. Sporting Prods. v. Johnny Stewart Game Calls, Inc.,* 865 S.W.2d 214-217-18 (Tex. App. --Waco 1993, writ denied); and, *Alcatel USA, Inc. v. DGI Techs.,* 166 F.3d 772, 785-89 & n.59 (5th Cir. 1999). Although "[u]nfair competition' is not, in and of itself, a separate tort," *Reliable Ambulance Serv. v. Mercy Hosp. of Laredo,* 2003 Tex. App. LEXIS 10934, No. 04-02-00188-CV, 2003 WL 21972724, at *2 (Tex. App. -- San Antonio, Aug. 20, 2003, no pet. h.) it is "within the broad scope of unfair competition [where] the independent causes of action such as trade-secret law, palming off or passing off, and misappropriation, to name only a few" are found. *United States Sporting Prods., Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214, 217 (Tex. App. -- Waco 1993, writ denied).

Stonecoat LP and Stonecoat GP have asserted claims against Defendants, Villareal and Gonzalez, for jointly participating in and conspiring to misappropriate trade secrets under, common law misappropriation of trade secrets, the United States Defend Trade Secrets Act of 2016 and the Texas Uniform Trade Secrets Act ("TUTSA"), Tex. Civ. Prac. & Rem. Code Ann. § 134A.001 *et seq.* The elements of a cause of action for trade-secret misappropriation under TUTSA are (1) the plaintiff owned a trade secret, (2) defendant misappropriated the trade secret, and (3) the misappropriation caused injury. *Id.* It is not necessary that the defendant use the trade secret to compete.[7]

*Trade secret information*. Information that is subject to trade-secret protection under TUTSA includes business, scientific, technical, economic, or engineering information; formulas, designs, prototypes, patterns, plans, compilations, program devices, programs, codes, devices, methods, techniques, processes, procedures, financial data, actual or and potential customers or suppliers. *Super Starr Int'l v. Fresh Tex. Produce,* LLC, 531 S.W. 829, 844 (Tex. App. Corpus

---

[7] A "trade secret" is defined as:

(6) "Trade secret" means all forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:

(A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and

(B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002;

Christi 2017, no pet.). Business methods are a trade secret. *Gonzales v. Zamora*, 791 S.W.2d 258, 263 (Tex. App. -- Corpus Christi 1990, no writ).

"Disclosure does not destroy the protection given to a trade secret if, when it is disclosed, the owner of that secret obligates the party receiving it not to disclose or use it." *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 668 (S.D. Tex. 2010).[8]

*Acquiring the trade secret by Improper means*.  Inducing the owner of a trade secret to disclose the trade secret by expressing an interest in buying the business has been held to be an improper means and, thus, a misappropriation of the trade secret. *Phillips v. Frey*, 20 F.3d 623, 630 (5th Cir.1994). Hiring the employee of a competitor who has trade secrets and is under a duty

---

[8]     "Misappropriation" means:

(A) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(B) disclosure or use of a trade secret of another without express or implied consent by a person who:

(i) used improper means to acquire knowledge of the trade secret;

(ii) at the time of disclosure or use, knew or had reason to know that the person's knowledge of the trade secret was:

(a) derived from or through a person who used improper means to acquire the trade secret;

(b) acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret; or

(c) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of or limit the use of the trade secret; or

(iii) before a material change of the position of the person, knew or had reason to know that the trade secret was a trade secret and that knowledge of the trade secret had been acquired by accident or mistake.

Tex. Civ. Prac. & Rem. Code Ann. § 134A.002. "Improper means," in turn, "includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means."  Tex. Civ. Prac. & Rem. Code Ann. § 134A.002.

not to disclose them is an improper means and, thus, misappropriation of the trade secret. *ForScan Corp. v. Dresser Indus.*, 789 S.W.2d 389, 394 (Tex. App. – Houston [14th Dist.] 1990, writ denied).

    ***Contractual relationship.*** Defendants' breach of their contractual promise to maintain the secrecy of the confidential information and trade secrets of Plaintiffs which they received during their employment with Plaintiffs constitutes a trade-secret misappropriation claim.[9] Defendants promised in their NDA contracts "to keep in confidence" and not to disclose "any and all" of Plaintiffs' information which they received from Plaintiffs. (S*ee*, Dkt. #127-4 at ¶¶ 1-2.2 and Dkt. #127-5 at ¶¶ 1-2.2). Within a year of making this promise, Defendants went to work for Kinser, Profanchik and Procal to compete against Plaintiffs.

    ***Employer employee confidential relationship***. The employer-employee relationship creates a confidential relationship even without a contract.[10] Employer--employee or master-servant relationships are a species of the formal principal-agent relationship. Restatement (Second) Agency §§ 2, 25 (Am. Law Inst. 1958); Restatement (Third) Agency § 1.01 (Am. Law Inst. 2005)("The elements of common-law agency are present in the relationships between employer and employee[.]"). As such, employment relationships impose fiduciary duties without the necessity of a formal contract. Thus, when a fiduciary relationship of agency exists between employee and employer, an employee has a duty to act primarily for the benefit of his employer in matters connected with his employment. *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d

---

[9]    *K & G Oil Tool & Serv. Co. v. G&G Fishing Tool Serv.*, 314 S.w.782,787 (Tex. 1958); *Sikes v. McGraw-Edison Co*., 665 F.2d 731, 735-36 (5th Cir. 1982); *Elkor Chem. Corp. v. Agri-Sul, Inc.*, 494 S.W.2d 204, 212 (Tex. App. -- Dallas 1973, writ ref'd n.r.e.); and, *Williams v. Compressor Eng'g*, 704 S.W.2d 469, 471 (Tex. App.--  Houston [14th Dist.] 1986,  writ ref'd n.r.e.) (breach of nondisclosure provisions in the contract).

[10]    *American Derringer Corp. v. Bond*, 924 S.W.2d 773, 777 (Tex. App. -- Waco 1996, no writ); *Numed, Inc. v. McNatt,* 724 S.W./2d 432, 434 (Tex. App.-- Fort Worth 1987, no writ); *Abetter Trucking Co. v. Arizpe,* 113 S.W.3d 503, 508-09 (Tex. App. – Houston [1st Dist.] 2003, no pet.) (principal and agent are among the formal fiduciary relationships which arise "as a matter of law").

177, 185 (Tex. App.--Houston [1st Dist.] 2005, no pet.). Additionally, an employee may not (1) appropriate company trade secrets; (2) solicit the former employer's customers while still working for his employer; (3) solicit the departure of other employees while still working for his employer; or (4) carry away confidential information. *Wooters v. Unitech Int'l, Inc.,* 513 S.W.3d 754, 762-63 (Tex. App.--Houston [1st Dist.] 2017, pet. denied).

There is no dispute that Defendants worked for Plaintiffs as employees and had special access to Plaintiffs' business methods and operations, specialized training, financial records, employee record, wages, salaries, and payment schedules. Defendants admit that in April of 2015 they ceased their employment with Plaintiffs and begin working for Kinser and Profanchik immediately and, in January 2016, begin working for Plaintiffs' competitor, Procal -- a company owned, controlled and managed by Profanchik and Kinser.

Defendants' motion suggests only two (2) reasons why they believe they are entitled to a summary judgment on Plaintiffs' misappropriation claim against them. First, Defendants suggests Plaintiffs do not have any trade secrets and, second, they suggest there is no evidence Defendants took or are using the trade secrets. Both suggestions fail.[11]

The summary judgment record contains disputed facts regarding the trade secrets, ownership of the trade secrets and whether Defendants in participation and joint enterprise with Kinser, Profanchik and Procal misappropriated the trade secrets of Plaintiffs. Clearly, marketing strategy, vendor lists, sales information, proprietary financial information (including strategies, profit margins, and financial plans), and the like, as well as customer lists constitute trade secrets[12].

---

[11]     The United States Trade Secrets Act of 2016 creates a federal statutory cause of action for misappropriation of trade secrets. Kinser's Motion does not address this federal statutory claim as it relates to Stonecoat LP and Stonecoat GP and, therefore, it would be improper to grant him a summary judgment as to the federal statutory claims of Stonecoat LP and Stonecoat GP against him for misappropriation of trade secrets.

[12]     *T-N-T Motorsports, Inc. v Hennessey Motorsports, Inc*. 965 S.W. 18, 22-23 (Tex. App. – Houston [1st

Plaintiffs' trade secrets are significant assets in their business operations and is what gives them an advantage over competitors in the industry. The evidence is certainly not legally conclusive that Defendants *have not* taken and misappropriated Plaintiffs' confidential information and trade secrets. The evidence is disputed about whether Defendants misappropriated Plaintiffs' trade secrets and whether they employed those trade secrets to gain an unlawful jump-start on his entry into the sprayed vertical limestone industry with her new employer-Procal.

Plaintiffs clearly own trade secrets[13] which were disclosed to Profanchik and Kinser during their due diligence review of SCOT, and to Defendants. (*See* Morrison Aff. attached as Exhibit A at ¶¶ 13- 15, 24, 35-43, and 75). In addition, Stonecoat GP acquired, pursuant to the Product Rights Agreement all of the trade secrets and confidential information of Phillippe Mergaux and Pierre Chamielec related to the sprayed vertical limestone business -- both of whom, thereafter, went to work for Procal, Profanchik and Kinser. *Id.* at ¶¶ 44- 53; and, Part III., *supra* of this Response at ¶¶ 2and 3.  Procal, Profanchik and Kinser learned of the sale of the trade secrets in accordance with the Product Rights Agreement during their due diligence of SCOT and acquired Plaintiffs' trade secrets and confidential information for purposes of their due diligence, and Defendants learned of the trade secrets by working for Plaintiffs. *See* Morrison Aff. At ¶¶ 54-60; and, Part III., *supra* of this Response at ¶¶ 2, 3, 18-21, 25, 32-33). Defendants previously worked for Plaintiffs and then went to work for Profanchik, Kinser and Procal.

Defendants' argument that they did not "use" any of the confidential information and trade secrets they received from Plaintiffs is equally without merit. The TUTSA does not require "use"

---

Dist.] 1998, no writ); *Miller Paper Co. v. Roberts Paper Co.,* 901 S.W.2d 593, 601 (Tex. App. – Amarillo 1995, no writ); *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 467-69 (5th Cir. 2003) (customer list, contract terms, including renewal dates, premium information, loss information, credit reports, and reinsurance rates are proprietary information).

[13]  *See*, Part III., *supra* of this Response at ¶¶ 2, 3, and 12

of the trade secret to be actionable. It only requires that the defendant "misappropriated the trade secret." To constitute actionable misappropriation, it is not necessary that Defendants actually use the proprietary information to gain a competitive advantage; it is only necessary that they be in possession of proprietary information and in a position to use it. *Fox v. Tropical Whs., Inc.*, 121 S.W.3d 853, 860 (Tex. App. – Fort Worth 2003, no pet.). A defendant can misappropriate a trade secret by acquiring it with knowledge of improper means. *Super Starr Int'l v. Fresh Tex. Produce, LLC,* 531 S.W.3d 829, 844 (Tex. App. -- Corpus Christi 2017, no pet.). Tex. Civ. Prac. & Rem. Code §134A.002(3)(A).

### D. Defendants' motion does not establish as a matter of law that they are entitled to a summary judgment on Plaintiffs breach of contract claim.

Villareal executed a nondisclosure and noncompete contract with Plaintiffs on April 19, 2013. (*See* Dkt. # 127-2 at ℙ13 and Dkt. #127-4). Gonzalez executed a nondisclosure and noncompete contract with Plaintiffs on August 13, 2013. (*See* Dkt. # 127-3 at ℙ15 and Dkt. #127-5). Defendants do not contend that there was any undue influence or duress during the formation of the contracts and have not argued any procedural or substantiate unconscionability of the contracts. The Villareal and Gonzalez contracts are continuing in nature and they received due and adequate consideration for their promises in the contracts as stated on the face of the contracts including, but not limited to, receipt, delivery and access to privileged and confidential information, intellectual property and trade secrets of Stonecoat as well as payment for services rendered. (*See* Exhibit A, Morrison Aff. At ℙℙ 25-31; and, Part III., *supra,* of this Response at 2, 3, 18-21, 25, 32-33). Defendants also received financial information, bank statements, privileged information regarding intellectual property, and information regarding wages and salaries and commissions paid by Plaintiffs, and they also received specialized intellectual property and day-to-day training regarding the operations of the Stonecoat business (*See* Part III., *supra,* of this

Response at ¶¶ 2, 3, 18-21, 25, 32-33). Villareal admits that she received compensation from Plaintiffs for work performed pursuant to the contract. (See Dkt. # 127-2 at ¶¶ 8 and13). Neither Villareal nor Gonzalez make any claim that they did not receive the financial compensation promised them from Plaintiffs and neither make any claim for any unpaid wages or salary from Plaintiffs.

On the face of the Villareal and Gonzalez contracts, the contracts state that they will receive "confidential commercial information" including but not limited to "[a]ll strategic, technical, financial, business, sources and other information relating to Stonecoat and specifically including the identity of products, persons or entities relating thereto". (See Dkt. # 127-4 and 127-5 at 2-6). Plaintiffs gave this information to Villareal and Gonzalez in order for them to conduct their employment services for Plaintiffs. (See Ex. A at ¶ 77). Defendants' argument that there was a "lack of consideration" to enforce the contract is without merit.

Defendants' Motion fails to establish as a matter of law that the contracts are unenforceable. The Motion does not address well-recognized bases for finding a written contract unenforceable, as a matter of law. [14] The Villareal and Gonzalez contracts are enforceable because they meet all of the elements of an enforceable contract. The summary judgment record establishes that there was a valid offer[15], that the terms of the offer were clear and definite. *Engelman Irrigation,* 960 S.W.2d at 352; *see CytoGenix, Inc. v. Waldroff,* 213 S.W.3d 479, 485 (Tex. App.—

---

[14]     Under Texas law, "[t]he elements of a breach of contract claim are (1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach." *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015) (internal citations omitted).

[15]     *Domingo v. Mitchell,* 257 S.W.3d 34, 39 (Tex. App.—Amarillo 2008, pet. denied); *see* E*ngelman Irrigation Dist. v. Shields Bros.*, 960 S.W.2d 343, 352 (Tex. App.—Corpus Christi 1997), *pet. denied,* 989 S.W.2d 360 (Tex.1998); *Edmunds v. Houston Lighting & Power Co*., 472 S.W.2d 797, 798-99 (Tex. App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.).

Houston [1st Dist.] 2006, pet. denied), that Defendants were authorized to accept Plaintiffs offer and Plaintiffs were authorized to make the offer. *See, e.g.*, *Beverick v. Koch Power, Inc.,* 186 S.W.3d 145, 151 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

The summary judgment evidence record establishes that the Villareal and Gonzalez contracts were based on consideration, also known as "mutuality of obligation." *Texas Gas Utils. Co. v. Barrett*, 460 S.W.2d 409, 412 (Tex.1970); *Texas Farm Bur. Cotton Ass'n v. Stovall*, 253 S.W. 1101, 1105 (Tex.1923); *Iacono v. Lyons*, 16 S.W.3d 92, 94 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Only if the summary judgment evidence establishes, as a matter of law, that the contracts that lack consideration is it unenforceable. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex.1997); *Sudan v. Sudan,* 145 S.W.3d 280, 285 (Tex.App.—Houston [14th Dist.] 2004), *rev'd on other grounds,* 199 S.W.3d 291 (Tex.2006). Consideration is the bargained-for exchange of promises and consists of either a benefit to the promisor (the person who makes a promise) or a loss or detriment to the promisee (the person who receives a promise).[16] Villareal and Gonzalez have not disputed and have agreed that they received all monetary compensation which they were entitled to receive from Plaintiffs after the contracts were executed. The monetary compensation which Villareal and Gonzalez received is more than enough consideration for the contracts.

The summary judgment record fails to establish that the consideration for the Villareal and Gonzalez contracts was insufficient. [17] If consideration is expressly stated in the contract, it is

---

[16]   *Ulico Cas. Co. v. Allied Pilots Ass'n,* 262 S.W.3d 773, 790-91 (Tex.2008); *Roark v. Stallworth* Oil & Gas, Inc., 813 S.W.2d 492, 496 (Tex.1991); *see Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.—Dallas 2008, no pet.).

[17]   *Gulf Liquid Fertilizer Co. v. Titus,* 354 S.W.2d 378, 385 (Tex.1962); *see Martin v. Martin, Martin & Richards, Inc.*, 12 S.W.3d 120, 125 (Tex. App.—Fort Worth 1999, no pet.); *see, e.g.*, *In re Odyssey Healthcare,* Inc., 310 S.W.3d 419, 424 (Tex.2010) (mutual promises to submit all employment disputes to arbitration was sufficient consideration for arbitration agreement); *Leonard v. Texaco, Inc.*, 422 S.W.2d 160, 165 (Tex.1967)

presumed to be adequate. *Tag Res. v. Petroleum Well Servs.*, 791 S.W.2d 600, 605 (Tex. App.—Beaumont 1990, no writ). The Villareal and Gonzalez contracts meets all of the qualifications under Texas law to be enforceable and the summary judgment record does not establish, as a matter of law, any basis to conclude that the Villareal and Gonzalez contracts are legally unenforceable.

The argument that the Villareal and Gonzalez contracts are not supported by adequate consideration because they were already employees of Plaintiffs is erroneous because the record establishes that the Villareal and Gonzalez received additional consideration after their contracts were executed. Defendants' reliance on *Powerhouse Prods. v. Scott,* 260 S.W.3d 693 (Tex. App. -- Dallas 2008, no pet.) is misplaced for several reasons. First, the employer argued that the consideration was "continued opportunities to pilot the rocket pack." Plaintiffs did not make that argument here. Second, the Dallas Court of Appeals acknowledged that providing the employee with confidential information and training after the employee sign the agreement is sufficient consideration to support the non-compete provision; however, in *Powerhouse* the trial court found that "there is no evidence" that the employee "was provided with any confidential information" after the date of the agreement. *Powerhouse Prods,* 260 S.W.3d at 698. The evidence in the summary judgment record is not conclusive that Villareal and Gonzalez received no confidential and proprietary information and trade secrets after they signed their agreements with Plaintiffs. (*See* Ex. A at P78).

Defendants' reliance on *Eurecat US, Inc. v. Marland,* 527 S.W.3d 367 (Tex. App. – Houston [14th Dist.] 2017, no pet.) is equally misguided. In that case the court noted that "the only consideration stated in the agreements is *continued employment*" *Eurecat US, Inc.,* 527 S.W.3d at

---

(agreement not to bring suit in return for promise to pay for damage to land was adequate consideration); *Kidd v. Young*, 190 S.W.2d 65, 66 (Tex.1945) (payment of cash, although nominal, plus assumption of outstanding indebtedness, was contractual consideration).

389 (emphasis added). The employer "did not promise [in the contracts] that it would provide confidential information to" the employees". *Eurecat US, Inc.,* 527 S.W.3d at 389 n.31. As the Houston Court of Appeals noted, "an employer promised to provide confidential information need not be express and can supply consideration when the employer performs that promise of providing the information." *Eurecat US, Inc.,* 527 S.W.3d at 390, *citing, Mann Frankfurt Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009) and *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 655 (Tex. 2006).

In *Mann*, the Texas Supreme Court affirmed its previous decision in *Sheshunoff Mgmt.* were an at will employee signed at will employment agreement containing a covenant not to compete and also containing a promise by the employer to provide the employee "access to confidential information." *Mann Frankfurt Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 849. The Court held that mutuality of obligations for the agreement "can be satisfied by the employer actually performing its illusory promise to provide an employee with confidential information." *Mann Frankfurt Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 850, *citing, Alex Sheshunoff Mgmt. Servs., L.P.*, 209 S.W.3d at 655. As the Court noted, however, *Mann* differed from *Sheshunoff* because "Mann Frankfurt made no express promise to provide [the employee] access to confidential information [in the contract] although [the employee] promised not to disclose any confidential information." The Texas Supreme Court disagreed with the Court of Appeals holding that the agreement "must contain a representation that the employee was receiving consideration in return for his or her promise" and held that "[w]hen the nature of the work the employee is hired to perform requires confidential information to be provided for the work to be performed by the employee, the employer impliedly promises confidential information will be provided" and on this

basis, even in the absence of an express promise to provide confidential information in the contract, the contract is enforceable. *Mann Frankfurt Stein & Lipp Advisors, Inc.*, 289 S.W.3d at 851.

In this case, however, all of the contracts expressly state on their face that Profanchik, Kinser, Villareal and Gonzalez "will receive certain confidential commercial information regarding STONECOAT and his business information". *See* Dkt. #129-10, 129-11, 129-12 and 129-13 at 1. In addition, proprietary and confidential information and trade secrets were delivered to the Profanchik, Kinser, Villareal and Gonzalez as promised in the contracts. (*See* Ex. A at ¶¶ 15, 17, 19, 21, 24, 26, 29, 75 and 79.) Defendants' argument that there was not adequate consideration to support the enforcement of the Profanchik, Kinser, Villareal and Gonzalez contracts will is invalid. All

Defendants argument that their contracts are unenforceable because they do not contain "reasonable restrictions" is without merit. Defendants have not met their summary judgment burden to prove is a matter of law that a provision in a contract that prohibits them from competing after they have received confidential information and trade secrets is unenforceable, as a matter of law. Defendants complain that the restrictions in the noncompete provisions of their contracts are unreasonable. They are not. The contracts have the primary purpose of restricting Villareal's and Gonzalez's disclosure of confidential information and trade secrets of Plaintiffs which Defendants received in order to conduct their employment services for Plaintiffs.

To prove a breach of a covenant not to compete, the plaintiff must only show the covenant was ancillary to or part of an otherwise enforceable agreement at the time the agreement was made.[18] A covenant not to compete in an *employment* contract is ancillary to or part of an otherwise

---

[18]     Tex. Bus. & Com. Code §15.50(a); *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 771 (Tex.2011); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849 (Tex.2009); and, *Alex Sheshunoff Mgmt. Servs. v. Johnson*, 209 S.W.3d 644, 648 (Tex.2006).

enforceable agreement if (1) the consideration given by the employer in the agreement is reasonably related to an interest worthy of protection, and (2) the covenant not to compete was designed to enforce the employee's consideration or return promise in the agreement. *Marsh USA*, 354 S.W.3d at 773; *Neurodiagnostic Tex. L.L.C. v. Pierce,* 506 S.W.3d 153, 164 (Tex. App.—Tyler 2016, no pet.). The consideration given by the employer need only be reasonably related to the interest the employer is trying to protect with the covenant - such as protecting confidential information and trade secrets. *Marsh USA*, 354 S.W.3d at 775; *Neurodiagnostic Tex*, 506 S.W.3d at 164; *see Mann Frankfort*, 289 S.W.3d at 852

The business goodwill of the employer is a protectable interest.[19] The protection of Confidential or proprietary information, including trade secrets, is a protectable interest and is enforceable in noncompete contract.[20] Specialized training provided to the employee is a protectable interest and sufficient consideration to enforce a covenant not to compete. *E.g.*, *Neurodiagnostic Tex*, 506 S.W.3d at 165 (board certification).

A covenant not to compete designed to prevent a defendant from using confidential information and trade secrets to compete is enforceable. *Mann Frankfort,* 289 S.W.3d at 852. A covenant designed to enforce a promise not to disclose trade secrets is enforceable. *Ireland v. Franklin*, 950 S.W.2d 155, 158 (Tex. App.—San Antonio 1997, no writ); *see Light*, 883 S.W.2d at 647 n.15.

---

[19]    *Marsh USA,* 354 S.W.3d at 777; *Alex Sheshunoff Mgmt.*, 209 S.W.3d at 649; *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 682 (Tex.1990); *Gallagher Healthcare Ins. v. Vogelsang*, 312 S.W.3d 640, 647 (Tex.App.—Houston [1st Dist.] 2009, pet. denied).

[20]    *Alex Sheshunoff Mgmt.*, 209 S.W.3d at 649 (confidential or proprietary information); *DeSantis*, 793 S.W.2d at 682 (confidential or proprietary information and trade secrets); *Lazer Spot*, 387 S.W.3d at 46 (same); *Gallagher Healthcare*, 312 S.W.3d at 647 (confidential or proprietary information and customer information); *see Mann Frankfort*, 289 S.W.3d at 852 (confidential and proprietary information); *Martin v. Credit Prot. Ass'n,* 793 S.W.2d 667, 670 n.3 (Tex.1990) (dicta; customer information); *see, e.g., West v. Pennyrich Int'l,* 447 S.W.2d 771, 773 (Tex. App.—Waco 1969, no writ) (customer lists).

In determining the reasonableness of time in a covenant not to compete, the court should consider (1) whether the employer's interests need protection and (2) whether these interests outweigh the hardship imposed on the contracting party by enforcing the restriction. *See Bob Pagan Ford,* 638 S.W.2d at 178. Time restrictions from two to five years are generally upheld.[21] A geographic limitation is enforceable to the extent that it covers the area where Plaintiffs are doing business or contemplating doing business.[22] A covenant which has a scope of activities restricted to competing or displacing Plaintiffs' business is enforceable.[23] A limitation against soliciting customers with whom the employee had personal contact during employment is reasonable. *See Investors Diversified*, 645 S.W.2d at 339. When a covenant not to compete is ancillary to a separate, enforceable agreement, but its limitations on time, geographic area, and scope of activity impose greater restraint than is necessary, the Court should reform the covenant to ma all ke the restraints reasonable; but the restrictions do not make the covenant not to compete unenforceable.[24] In reforming the covenant, the Court should take the individual circumstances of

---

[21]     *AMF Tuboscope, Inc. v. McBryde*, 618 S.W.2d 105, 108 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.); *e.g., Gallagher Healthcare Ins. v. Vogelsang*, 312 S.W.3d 640, 655 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (two-year restriction upheld); *see, e.g., Chandler v. Mastercraft Dental Corp.*, 739 S.W.2d 460, 464-65 (Tex. App.—Fort Worth 1987, writ denied) (five-year restriction upheld); *Investors Diversified Servs. v. McElroy,* 645 S.W.2d 338, 339 (Tex. App.—Corpus Christi 1982, no writ) (one-year restriction upheld); *Electronic Data Sys. v. Powell*, 508 S.W.2d 137, 138-39 (Tex. App.—Dallas 1974, no writ) (three-year restriction upheld).

[22]     *Butler v. Arrow Mirror & Glass, Inc.,* 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.); *Evan's World Travel, Inc. v. Adams*, 978 S.W.2d 225, 232-33 (Tex. App.—Texarkana 1998, no pet.); *Diversified Human Res. Grp. v. Levinson-Polakoff*, 752 S.W.2d 8, 12 (Tex.App.—Dallas 1988, no writ); and, *see Property Tax Assocs. v. Staffeldt*, 800 S.W.2d 349, 351 (Tex. App.—El Paso 1990, writ denied).

[23]     *See Peat Marwick Main & Co. v. Haass,* 818 S.W.2d 381, 387-88 (Tex.1991); *Butler*, 51 S.W.3d at 794-95 (covenant prohibiting former manager of glass-installation company from installing mirrors and glass products in new residential construction was reasonable); *Weed Eater*, 562 S.W.2d at 902 (covenant prohibiting employee with knowledge of former employer's trade secrets from working for former employer's direct competitors was reasonable).

[24]     *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 778 (Tex.2011); *Neurodiagnostic Tex, L.L.C. v. Pierce*, 506 S.W.3d 153, 166 (Tex.App.—Tyler 2016, no pet.); *Hardy v. Mann Frankfort Stein & Lipp Advisors, Inc.*, 263 S.W.3d 232, 250-51 (Tex.App.—Houston [1st Dist.] 2007), *rev'd on other grounds sub nom. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex.2009); *see American Nat'l Ins. v. Cannon,* 86 S.W.3d 801, 808 (Tex. App.—Beaumont 2002, no pet.).

the case into account. *American Nat'l Ins.,* 86 S.W.3d at 808. The Court must enforce the covenant as reformed. Tex. Bus. & Com. Code §15.51(c).

The evidence is undisputed that the Villareal and Gonzalez went to work for Profanchik and Kinser and their competing company, Procal, immediately after Profanchik and Kinser had completed their due diligence of SCOT. The evidence is also undisputed that Villareal and Gonzalez did the same activities for Procal that they had previously done for Plaintiffs. The evidence undisputed that Villareal and Gonzalez are competing against Plaintiffs at a Procal office located only a few blocks from the offices and showroom of Plaintiffs in Addison, Texas and that Villareal and Gonzalez are directly competing against Plaintiffs in Dallas and Collin County -- which were counties where they previously worked for Plaintiffs. Villareal and Gonzalez have failed to show any law that would support a finding that their promises not to compete with Plaintiffs is unenforceable as a matter of law. They are clearly competing. They are clearly doing the same activities for the competitor. They are clearly competing in the same Texas counties where they previously worked for Plaintiffs, and they have been doing so since at least January of 2016.

### E. Defendants' Motion does not establish as a matter of law that Defendants are entitled to a summary judgment on Plaintiffs' breach of fiduciary duty claim.

Defendants claim that, as a matter of law, they have no fiduciary duty to Plaintiffs because Defendants claim that no fiduciary duty exists in any circumstance between employee and employer. Defendants were employed by and worked for Plaintiffs and were given privity to highly confidential, proprietary and trade secret information of Plaintiffs. Clearly, then, the summary judgment evidence is undisputed that Defendants were employees of Plaintiffs. Employees have fiduciary duties to their employers. (*See* case cites at n.10 and at 20-21, *supra*).

Defendants' reliance on *D'Onofrio v. Vacation Publs., Inc.,* 888 F.3d 197 (5th Cir. 2018) is misplaced, and is contrary to the long-established Texas law that employees owe their employers a fiduciary duty. (*See* case cites at n. 10 and at 20-21, *supra*). The Court did not hold in *D'Onofrio* that employees do not owe their employers a fiduciary duty. In fact, the Court recognized that "under common law principles of agency, employees do owe certain limited fiduciary duties to not compete with their employers" *even in the absence of a contract not to compete. D'Onofrio,* 888 F.3d at 216, *citing, Johnson v. Brewer & Pritchard, P.C.,* 73 S.W.3d 193, 202 (Tex. 2002). Under these authorities, there is clearly a fiduciary duty owed by Defendants to Plaintiffs and Defendants' argument that no fiduciary duty exists is without merit. The evidence is undisputed that Villareal and Gonzalez are working for a competitor using the same specialized skill and training and proprietary and confidential information and trade secrets that they received while they were employees of Plaintiffs. Defendants have not established, as a matter of law, that Defendants have not breached their fiduciary duty to their former employer.

> **F. Defendants' Motion does not establish as a matter of law that they are entitled to a summary judgment on Plaintiffs' unfair competition claim.**

Plaintiffs have previously replied to Defendants' arguments regarding the unfair competition claim and incorporate those arguments herein. (*See* case cites at n. 5 and 6, *supra*).

> **G. Defendants' Motion does not establish as a matter of law that they are entitled to a summary judgment on declaratory relief claims.**

Defendants' arguments and authorities regarding the declaratory relief sought by Plaintiffs are misplaced. In *May v. Wells Fargo Bank, N.A.,* 2013 U.S. Dist. LEXIS 124235 *11 (S.D. Tex. 2013), the Court denied the declaratory relief sought only because "the claims are essentially the same as" the breach of contract claims which the Court had already dismissed and, thus, "there is no 'substantial and continuing controversy between two adverse parties.'" This case is

inapplicable. In *Utica Lloyd's v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998), the Fifth Circuit denied attorney's fees sought pursuant to the *Texas DJA* because it is a procedural rule and not a substantive rule. This case does not apply to the federal DJA, 28 U.S.C. §§ 2201 and 2202, which provides a form of relief to Plaintiffs. *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 240 (1937). Defendants have not argued and provided no authority which holds that this Court does not have jurisdiction to render a declaratory judgment pursuant to the federal DJA. Therefore, Defendants' Motion on this basis should be denied.

### H. Defendants' have not established as a matter of law that they are entitled to a summary judgment on Plaintiffs' injunction claims.

Defendants claim that injunctive relief is not available because all of Plaintiffs' causes of action should be dismissed. Defendants' argument begs the question. Plaintiff has previously addressed Defendants' erroneous arguments regarding Plaintiffs' causes of action and there is no need to restate the arguments here. Because Defendants' Motion is flawed as to Plaintiffs' causes of action, there arguments regarding injunctive relief are equally without merit. Next, Defendants claim that the injunctive relief claims should be denied because there is no "irreparable injury." However, Defendants agreed in their contract that disclosure of SCOT's confidential and proprietary information and trade secrets would be "irreparable injury" and irreparable injury is not necessary when an injunction is sought under the "inevitable-disclosure doctrine" to protect trade secrets and to prohibit a former employee from using or disclosing the former employer's trade secrets or otherwise disclosing the trade secrets which would result in irreparable injury.[25] Injunctive relief is appropriate for Plaintiffs.

---

[25]    *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 241 n. 12 (Tex. App. – Houston [1st Dist.] 2003, no pet.); *Rugen v. Interactive Bus. Sys.*, 864 S.W.2d 548, 552 (Tex. App. -- Dallas 1993, no writ) (injunctive relief proper when former employee was in position to use confidential information and such use was likely); *Williams v. Compressor Eng'g*, 704 S.W.2d 469, 471-72 (Tex. App. – Houston [14th Dist.] 1986, writ ref'd n.r.e.) (injunctive relief proper because former employee working in similar capacity for new employer

*I. Defendants' Motion does not establish as a matter of law that they are entitled to a summary judgment on Plaintiffs' damages calculations.*

Plaintiffs damages calculations are supported by expert testimony from Plaintiffs' expert witnesses and Defendants have not offered in their Motion any evidence rebutting Plaintiffs' expert witnesses' testimony regarding damages. (*See* Exhibit A, Morrison Aff. at ⁋⁋68-72).

**1.    $500,000 – fair market value of proprietary and confidential information and trade secrets.**

In an action for trade secret misappropriation, the plaintiff can recover actual damages. *Wellogix, Inc. v. Accenture, L.L.P.,* 716 F.3d 867, 879 (5th Cir. 2013). Damages may be awarded based on the value of what the plaintiff lost or on the value of what the defendant has gained. *University Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 535-36 (5th Cir. 1974); and, *Southwestern Energy Prod. v. Berry-Helfand*, 491 S.W.3d 699, 710-11 (Tex. 2016). Plaintiff can seek damages measured by the value that a reasonably prudent investor would have paid for the trade secret. *Wellogix, Inc.,* 716 F.3d at 879; and, *Southwestern Energy Prod.*, 491 S.W.3d at 710-11. Plaintiffs' expert witness has valued the fair market value of the trade secrets at $500,000 based on his opinions of the value of the trade secrets and supported by arms-length fair market value commercial negotiation of a contract to purchase the trade secrets for $500,000 (*see* Exhibit A, Morrison Aff. at ⁋⁋68-72, ⁋ E).

**2.    $600,000 -- Reasonable fair market royalty.**

Defendants suggest a franchise fee. Plaintiffs have never claimed a franchise fee. However, a plaintiff can seek damages measured by a "reasonable royalty" for misappropriation of a trade secret.[26] The royalty is calculated based upon what would be the value of the confidential

---

could not avoid using former employer's confidential knowledge, even when acting in good faith); *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189-89 (5th Cir. 1984) (injunctive relief proper to prevent employee from competing with former employer); and, *FMC Corp. v. Varco Int'l*, 677 F.2d 500, 504-05 (5th Cir. 1982) (same).

[26]    *Southwestern Energy Prod.*, 491 S.W.3d at 711; *Calce v. Dorado Expl., Inc.*, 309 S.W.3d 719, 738 (Tex.

information and trade secrets at the beginning of the infringement. *Metallurgical Indus v. Fourtek, Inc.,* 790 F.2d 1195, 1208 (5th Cir. 1989). Plaintiffs' expert witness has valued the fair market value of a reasonable royalty fee in the amount of $600,000 (*See* Exhibit A, Morrison Aff. at ¶¶68-72, ¶ F). Defendants offered no rebuttal evidence.

### 3.     Plaintiffs' lost profits method of calculation is proper.

Defendants' suggestion that Plaintiffs' lost profits analysis is flawed because it is based on "gross profits" is erroneous. Plaintiffs' lost profits analysis is not based upon "gross profits" or "gross receipts"; but, rather, is based upon net profits lost using acceptable methods of calculation under Texas law.

Plaintiffs are entitled to recover actual damages. Actual damages, also called "compensatory damages," are awarded to repair a wrong or to compensate for an injury. *Hancock v. Variyam,* 400 S.W.59, 65 (Tex. 2013). Economic damages are damages intended to compensate the claimant for actual economic or pecuniary loss. Tex. Civ. & Rem. Code §41.001(4). A plaintiff can recover damages for lost profits. *Texas Instrs., Inc. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994). Lost profits are calculated by deducting total expenses from total receipts. *SJW Prop. Commerce, Inc. v. Southwestern Pinnacle Props., Inc.,* 328 S.W.3d 121, 160 (Tex. App. -- Corpus Christi 2010, pet. denied). A plaintiff does not have to prove lost profits by exact calculation. *ERI Consulting Eng'rs, Inc. v. Swinnea,* 318 S.W.3d 867, 876 (Tex. 2010). All that is required is reasonable certainty that profits would have been yielded, *Phillips v. Carlton Energy Grp.,* 475 S.W.3d 265, 278 (Tex. 2015), and uncertainty about the amount of lost profits is not fatal to the recovery of lost profits. *Lake v. Cravens,* 488 S.W.3d 867, 902 (Tex. App. Fort Worth 2016, no pet.).

App. -- Dallas, no pet.); *Molex, Inc. v. Nolen*, 759 F.2d 474, 479 (5th Cir. 1985).

A plaintiff can prove by competent evidence lost profits by the testimony of the owner or manager of the plaintiff's business without the testimony of a retained expert witness, *Bowen v. Robinson*, 227 S.W.3d 86, 97 (Tex. App. – Houston [1st Dist.] 2006, pet. denied); *ERI Consulting Eng'rs, Inc.,* 318 S.W.3d at 876, so long as the person who testifies is familiar with the business. *Community Pub. Serv. v. Gray,* 107 S.W.2d 495, 498 (Tex. App. -- El Paso 1937, no writ). A witness (not a retained expert witness) may testify about lost profits by testifying from personal knowledge about what the profit would have been. *Naegeli Trans. v. Gulf Electroquip, Inc.,* 853 S.W.2d 737, 740 (Tex. App. – Houston [14th Dist.] 1993, writ denied. The owner of the business who has personal knowledge of the business or a manager of the business with personal knowledge can prove lost profits by establishing the business's lost revenue through comparative evidence from a recent time period and then testifying about the profit margin on that revenue.[27]

The profits of a defendant's competing business may be considered in assessing damages and lost profits of the plaintiff.[28] In *Welsh*, the Texas Supreme Court approved opinion testimony by the plaintiff about defendant's financial performance in his business as a "proper measure of the damages sustained by the plaintiff." *Welsh,* 16 S.W. at 745. "The only predicate for the amount of the judgment, or for any judgment, is in the evidence of the amount of business transacted by the defendants and the total profits realized by them from it." *Welsh,* 16 S.W. at 745. The Texas

---

[27]      *ERI Consulting Eng'rs, Inc.,* 318 S.W.3d at 877; *White v. Southwestern Bell Tel. Co*., 651 S.W.2d 260, 262-63 (Tex. 1983) (plaintiff who managed business for 33 years was competent to testify that his profit was 25 to 30% of gross receipts).

[28]      *Arabesque Studios, Inc. v. Academy of Fine Arts Int'l*, 529 S.W.2d 564, 569 (Tex. App. -- Dallas 1975, no writ); *Butts Retail, Inc. v. Diversifoods, Inc.*, 840 S.W.2d 770, 773 (Tex. App. -- Beaumont 1992, writ denied (admission of evidence of employee's store's financial records to establish former employer's lost profits was proper); *Welsh v. Morris*, 16 S.W. 744 (Tex. 1891) (consideration of defendant's financial records and profits was proper to calculate plaintiff's lost profits); *Chandler v. Mastercraft Dental Corp.*, 739 S.W. 461, 466 (Tex. App. -- Fort Worth 1987, writ denied);  *Amigo Broad, LP v. Spanish Broad. Sys,* 512 F.3d 472, 494 (5th Cir. 2008); and, *Sandare Chemical Co. v. WAKO Int'l, Inc.* 820 S.W.2d 21, 24 (Tex. App. -- Fort Worth 1991, no writ) (evidence of the defendant's profits constitutes evidence of the plaintiff's lost profits).

Supreme Court has specifically endorsed a calculation of a plaintiff's lost profits based on the profits of the defendant.

Plaintiffs' manager Ken Morrison, has testified regarding Plaintiffs' lost profits and has been designated as an expert witness to offer expert testimony based on his years of experience in the sprayed limestone business. (*See* Exhibit A, Morrison Aff. at ¶¶68-72). Morrison's method of calculation of the lost profits of Plaintiffs is based tax return documents showing on a 30% profit margin on the gross receipts of Plaintiffs for the period of time from 2014 through 2016. Morrison has testified that a 30% profit on gross revenues is customary in the sprayed limestone business based on his years of experience in the industry and based on three years of financial records and tax returns of Plaintiffs. Morrison has testified that in his opinion Procal would earn a 30% profit on the amount of Procal's gross revenue and that a 30% profit margin on gross receipts of Procal is customary in the industry.

Defendants' argument that Morrison's testimony regarding lost profits is based only on "gross receipts" is incorrect. Gross receipts were only used in the calculation to determine the total revenue in order to apply the percentage of profits from that revenue and such method of calculation is proper under Texas law.

Defendants' suggestion that SCOT has no damages because of its relationship with Stonecoat of North Dallas, LLC ("Stonecoat ND") is without merit. SCOT derives its profits, in part, from the business operations of Stonecoat ND and has made certain assignments and subcontracted certain jobs to Stonecoat ND; however, SCOT has maintained the legal right to enforcement of its contracts for the benefit of Stonecoat ND. (*See* Exhibit A, Morrison Aff. at ¶75: Exhibit D, affidavit of Vance McMurray, Esq.). In addition, all of the contracts with Profanchik, Kinser, Villareal and Gonzales state on their face that they "inure to the benefit of" and are binding

upon the successors and assigns of the parties to the contracts. (*See* DKT. ## 128-3, 128-4 at ¶

2.16). SCOT retained the right to enforce the contracts with Profanchik, Kinser, Villareal and

Gonzales including seeking damages for injury.

### 4.    The $250,000 liquidated damages provision in the contract is enforceable.

Defendants' argument that the liquidated damages provision agreed to by Defendants and

Plaintiffs is unenforceable because "no damages were incurred by Plaintiffs" is erroneous. It is

clear from the affidavit of Morrison that Plaintiffs incurred damages. (*See* Exhibit A, Morrison

Aff. at ¶¶ 68-72). Defendants' Motion offers no evidence that SCOT *did not* incur damages.

In addition, one of the purposes of a liquidated damages provision in a contract is for the

parties to agree to the damages in the event of a breach of the contract because damages may be

difficult to ascertain or prove. Because actual damages are sometimes difficult to establish, a

liquidated-damages clause sets the amount of anticipated damages for a breach of the contract in

advance. *Shin-Con Dev. Corp. v. I.P. Invs.,* 270 S.W.3d 759, 767 (Tex. App.—Dallas 2008, pet.

denied). A liquidated-damages clause is valid if (1) the harm caused by the breach is incapable of

being estimated or is difficult to estimate at the time of the creation of the agreement, and (2) the

amount of liquidated damages is a reasonable forecast of just compensation.[29]

Under the anticipated-harm test, if the parties anticipate that it may be difficult to establish

the amount of actual damages, the parties may agree, as a matter of contract law, in advance to a

stipulated or liquidated damages provision in a contract. *Baker v. International Record Syndicate,*

*Inc.*, 812 S.W.2d 53, 55 (Tex. App.—Dallas 1991, no writ) (anticipated-harm test). Defendants

presented no evidence in their motion that the $250,000 liquidated damages provision of their

---

[29]    *FPL Energy, LLC v. TXU Portfolio Mgmt. Co*., 426 S.W.3d 59, 69 (Tex.2014); *BMG Direct Mktg., Inc. v. Peake*, 178 S.W.3d 763, 766 (Tex.2005); *Phillips v. Phillips*, 820 S.W.2d 785, 788 (Tex.1991); *see also R. Conrad Moore & Assocs. v. Lerma*, 946 S.W.2d 90, 95-96 (Tex. App.—El Paso 1997, pet. denied).

contracts was not the anticipated harm to Stonecoat if Defendants breached their contracts and they presented no evidence and make no argument that $250,000 is an unreasonable amount. Defendants agreed in their contracts with Plaintiffs to a liquidated damage amount of $250,000. (*See* Dkt. # 127-4 and 127-5 at ₱ 2.5, entitled "remedies.")

The only legal authority cited by Defendants in their Motion is the Texas Supreme Court decision in *FPL Energy, LLC v. TXU Portfolio Mgmt. Co*., 426 S.W.3d 59 (Tex.2014). Defendants site *FPL Energy, LLC* for the general proposition that contract damages are to compensate for "losses sustained." *FPL Energy, LLC* holds, however, that Defendants bear the "burden of proving [the] unreasonableness" of the amount of --$250,000 -- of the liquidated damages.  *FPL Energy, LLC* , 426 S.W.3d at 72. The reasonableness of the forecast or anticipated harm to Plaintiffs if Defendants breach their contracts with Plaintiffs is at the time of the parties making the contract - - April and August 2013. *Mayfield v. Hicks*, 575 S.W.2d 571, 576 (Tex. Civ. App. – Dallas 1978, writ ref'd n.r.e); and, *accord* RESTATEMENT (SECOND) OF CONTRACTS § 356 cmt. B (1981). Defendants provided no analysis in the Motion and presented no evidence attached to their Motion regarding the "unreasonableness" of the $250,000 liquidated damages provision of their contracts at the time of the making of the contract in 2013. For these reasons, the liquidated damage provision of $250,000 is enforceable.

## V.

## CONCLUSION

For these reasons, Plaintiffs pray that the Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

By: /s/ Charles Bundren

**WM. CHARLES BUNDREN & ASSOCIATES LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
Lead Attorney and Attorney-in Charge
State Bar No. 03343200
2591 Dallas Parkway, Suite 300
Frisco, Texas 75034
(214) 808-3555          Telephone
(972) 624-5340          Facsimile
e-mail: charles@bundrenlaw.net
**ATTORNEY FOR PLAINTIFFS:**
**STONECOAT OF TEXAS, LLC**
**STONECOAT GP, LLC and**
**STONECOAT LP**

## CERTIFICATE OF ELECTRONIC FILING

The undersigned hereby certifies that this document has been filed by electronic means through the court's CM/ECF electronic filing system on the date indicated below.

## CERTIFICATE OF SERVICE UNDER LOCAL RULE

Pursuant to LOCAL RULE CV-5 (c)&(d) of the Local Civil Rules of the United States District Court for the Eastern District of Texas, Notice of Electronic Filing of this document automatically generated by this Court's CM/ECF system constitutes service of this document under Federal Rule of Civil Procedure 5(b)(2)(E) and is sufficient service by serving the parties indicated below.

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of March, 2019 a true and correct copy of the foregoing document was served in accordance with the Federal Rules of Civil Procedure and the United States District Court for the Eastern District of Texas Local Rules on all legal counsel of record for any party and all pro se parties by serving the following:

HANCE SCARBOROUGH, LLP
400 W. 15th Street, Ste. 950
Austin, Texas 78701
Telephone: (512)479-8888
Facsimile: (512)482-6891
Terry L. Scarborough
State Bar No. 17716000
tscarborough@hslawmail.com
V. Blayre Peña
State Bar No. 24050372
bpena@hslawmail.com

Stacey V. Reese (Of Counsel)
State Bar No. 24056188
sreese@hslawmail.com

**ATTORNEYS FOR DEFENDANTS**
**PROCAL STONE DESIGN, LLC, JOHN PROFANCHIK, SR., JUSTIN KINSER, IRMA**
**VILLARREAL, AND ALFREDO GONZALES**


__x__by the Court's CM/ECF Pacer electronic filing System pursuant to FRCP 5(b)(2)(E) and
5(b)(3), and LOCAL RULE CV-5 (c)&(d),

____ by certified mail return receipt requested deposited with the United States Postal Service
on the date indicated above pursuant to FRCP 5(b)(2)(C),

____ by email at the email address indicated above pursuant to FRCP 5(b)(2)(E), and/or

____ by hand delivery service on the date indicated above pursuant to FRCP 5(b(2)(A) and
(B).


By: /s/ Charles Bundren
**WM. CHARLES BUNDREN & ASSOCIATES**
**LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
**ATTORNEY FOR PLAINTIFFS:**
**STONECOAT OF TEXAS, LLC**
**STONECOAT GP, LLC and**
**STONECOAT LP**


**CERTIFICATE OF CONFERENCE**

Counsel for Plaintiffs has complied with the meet and confer requirements in Local Rule
CV-7(h). Plaintiffs' objections and motion to strike portions of the affidavits and materials
attached to the motion for summary judgment are opposed.

The personal conference or conferences required by the Local Rules of the United States
District Court for the Eastern District of Texas has been conducted by telephone conference
call with Blayre Pena, Esq. on March 28, 2019.

The discussions between the participants that participated in the meet and confer on
March 28, 2019, in good faith, have concluded that the discussions have conclusively ended in
an impasse. No agreement can be reached with respect to the relief requested by Plaintiffs in
this motion regarding the affidavits and attachments of evidence.

By: /s/ Charles Bundren
**WM. CHARLES BUNDREN & ASSOCIATES
LAW GROUP, PLLC**
Wm. Charles Bundren, Esq.
**ATTORNEY FOR PLAINTIFFS:
STONECOAT OF TEXAS, LLC
STONECOAT GP, LLC and
STONECOAT LP**